401 So.2d 899 (1981)
DECOR PAINTING & IOWA MUTUAL INSURANCE COMPANY, Appellant,
v.
David ROHN, Appellee.
No. XX-467.
District Court of Appeal of Florida, First District.
July 23, 1981.
*900 Bernard J. Zimmerman & William G. Berzak of Akerman, Senterfitt & Eidson, Orlando, for appellant.
Bill McCabe of Shepherd, McCabe & Cooley, and Edward H. Hurt of Hurt & Parrish, Orlando, for appellee.
ERVIN, Judge.
In this worker's compensation action, the appellants, employer/carrier, contend that the deputy commissioner (the deputy) erred in adopting the impairment rating given by one of the examining physicians, Dr. Flynn, which was determined without strictly complying with the American Medical Association's Guides to the Evaluation of Permanent Impairment[1] referred to in Section 440.15(3)(a)3, Florida Statutes (1979). We agree and reverse with instructions.
The claimant broke his ankle in connection with a compensable accident on September 14, 1978. Dr. Reckles, the claimant's treating physician, performed surgery on the ankle, fixing the fracture and applying bone screws, which were later removed. The parties stipulated that the claimant reached MMI on September 5, 1979.
The central dispute on appeal concerns the deputy's finding as to the permanent physical disability rate which was determined in the midst of a dispute among three physicians as to how AMA tables 36 and 37 at pages 31 and 32 of the AMA guides should be applied.
Dr. Reckles testified, based on his observation of the claimant's ankle, that each one of the claimant's joint ankle motions was not totally restricted. He explained that if the subtalor joint is rigid and not moving one degree, then, and only then is it ankylosed (complete fusion of the joints). He took the position that "ankylosis  for purposes of applying the AMA ankylosis tables  meant loss of motion in all the joints of the ankle." His ultimate conclusion was that the claimant's ankle was not ankylosed, just severely restricted. Therefore, he utilized the loss of motion tables, instead of the ankylosis tables and arrived at an impairment rating of 21 percent.
Dr. Flynn, however, took the position that the claimant's ankle, while not technically ankylosed, was ankylosed for all practical purposes at the subtalor joint. Due to this conclusion, Dr. Flynn partially used the ankylosis tables in arriving at his rating. He combined the restricted motion and ankylosis tables as follows: First, utilizing the restricted motion tables, he determined that claimant suffered a seven percent disability from a loss of 20 degrees of dorsiflexion and a 11 percent disability from a 10 degree loss of plantar-flexion. He next utilized the ankylosis portion of the tables and arrived at a 30 percent disability rating of the subtalor, added the 30 percent to the two restricted motion ratings, and arrived at a composite 48 percent impairment rating. To that he added a 15 percent factor for pain which totaled 63 percent and which he rounded to 65 percent. Prior to the hearing, he had arrived at a 65 percent rating without utilizing the AMA tables.
Finally, Dr. Samford, a consulting physician, opined that Dr. Flynn had improperly used the AMA tables because the claimant's ankle  which had some motion  was not ankylosed. By referring to the restricted motion tables and by adding a percentage factor for pain he arrived at a 40 percent impairment rating. The deputy accepted Dr. Flynn's impairment rating and thus determined that the claimant's right lower extremity was 65 percent permanently partially disabled. The deputy accepted Dr. Flynn's view that the claimant's ankle was *901 for all practical purposes ankylosed. The deputy rejected Dr. Reckles opinion, largely because of his earlier inconsistent opinions. He also rejected Dr. Samford's opinion because Dr. Samford did not personally observe the claimant.
Dr. Flynn's opinion was invalid because his rating was not made in accordance with Section 440.15(3)(a)3 which provides:
In order to reduce litigation and establish more certainty and uniformity in the rating of permanent impairment, the division shall establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings. The schedule shall be based on generally accepted medical standards for determining impairment and may incorporate all or part of any one or more generally accepted schedules used for such purpose, such as the American Medical Association's Guides to the Evaluation of Permanent Impairment. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, Copyright 1977, 1971, by the American Medical Association, shall be the temporary schedule and shall be used for purposes hereof. (e.s.)
The Division has yet to adopt by rule a permanent schedule, and thus the American Medical Association Guides are applicable. Due to the stated intent of the legislature, and its multiple use of the word "shall", we construe the statute as imposing a mandatory obligation, cf. Tascano v. State, 393 So.2d 540 (Fla. 1980), upon the deputy commissioner to employ solely the AMA guides when determining a disability rating based solely on anatomical impairment. Cf. Tallahassee Memorial Regional Medical Center v. Snead, 400 So.2d 1016 (Fla. 1st DCA 1981). Dr. Flynn's rating clearly went beyond the tables when he added a subjective 15 percent factor for pain based upon his composite impairment rating from the tables. Additionally, his application of the AMA tables does not comport with logic and reason. While we are hesitant to interpret these rather technical medical tables, it is our obligation to do so because the statute has mandated the use of the AMA tables, and to that extent those tables are law. Under AMA table 36 are two subtables, one for restricted motion, and another for ankylosis. Following those tables are instructions for computing disability for each respective subtable. The instructions do not indicate that the computation of the two subtables can be combined or intermingled; rather, the manner in which each subtable and their respective instructions are segregated implies the opposite conclusion. Here the deputy's disability rating was premised on little more than an abstract interpretation of the AMA guides mandated by statute. Cf. Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981); Bowling v. Dept. of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981); ABC Liquors, Inc. v. Dept. of Business Regulation, 397 So.2d 696 (Fla. 1st DCA 1981). Dr. Flynn did not give any testimony in an attempt to explain or justify his combining the ankylosis and loss of motion tables. Moreover, Dr. Flynn's use of the AMA tables is suspect, giving rise to the conclusion that they were used only to rationalize the previous impairment rating he had given the claimant which had been determined without the use of the tables.
In this opinion, it is not our intention to foreclose the deputy's right to choose between conflicting medical opinions as to whether claimant's ankle was ankylosed or severely restricted. We simply hold that once a determination is made in favor of one diagnosis, the table applicable to it must be, consistently with the statute, exclusively utilized and may not be combined with any other table, nor may subjective factors such as pain and suffering be superimposed so as to produce a rating in excess of that permitted within the pertinent table.
Reversed and remanded for further consistent proceedings.
ROBERT P. SMITH, Jr., C.J., and McCORD, J., concur.

*902 APPENDIX

 Ankylosis
 1. Place goniometer base as if measuring neutral position shown
above. Measure deviation from neutral position with goniometer
arm. Record goniometer reading.
 2. Consult (Ankylosis) Table 36 for corresponding impairment of
lower extremity.
 Example: Ankle joint ankylosed at 10 degrees dorsi-flexion =
50% impairment of lower extremity.
 TABLE 36  ANKLE JOINT
-------------------------------------------------------------
 Impairment of
 Lower Extremity
Amputation  At Joint ................................... 70%
 Restricted Motion
Average range of DORSI-PLANTAR FLEXION = 60 degrees
Value to total range of joint motion = 70%
 Degrees of
Dorsi-flexion from Joint Motion
neutral position (0°) to: LOST RETAINED
 0° .............. 20 ....... 0 ....... 7%
 10° .............. 10 ....... 10 ....... 4
 20° .............. 0 ....... 20 ....... 0
Plantar-flexion from
neutral position (0°) to:
 0° .............. 40 ....... 0 ...... 14%
 10° .............. 30 ....... 10 ...... 11
 20° .............. 20 ....... 20 ...... 7
 30° .............. 10 ....... 30 ...... 4
 40° .............. 0 ....... 40 ...... 0
 Ankylosis
Joint ankylosed at:
 0°[*] (neutral position) ............ 30%
 10° .................................... 50
 20° (full dorsi-flexion) ............... 70
Joint ankylosed at:
 0°[*] (neutral position) ............ 30%
 10° .................................... 40
 20° .................................... 50
 30° .................................... 60
 40° (full plantar-flexion) ................. 70
*903 2. Consult (Ankylosis) Table 37 for corresponding impairment of
lower extremity.
 Example: Ankle joint ankylosed at 20 degrees inversion = 57%
impairment of lower extremity.
 TABLE 37  ANKLE JOINT
----------------------------------------------------------------
 Impairment of
 Lower Extremity
Amputation  At Joint ...................................... 70%
 Restricted Motion
Average range of INVERSION-EVERSION = 50 degrees
Value to total range of joint motion = 30%
 Degrees of
Inversion from neutral Joint Motion
position (0°) to: LOST RETAINED
 0° .............. 30 ....... 0 ....... 5%
 10° .............. 20 ....... 10 ....... 4
 20° .............. 10 ....... 20 ....... 2
 30° .............. 0 ....... 30 ....... 0
Eversion from neutral
position (0°) to:
 0° .............. 20 ....... 0 ....... 4%
 10° .............. 10 ....... 10 ....... 2
 20° .............. 0 ....... 20 ....... 0
 Ankylosis
Joint ankylosed at:
 0°[*] (neutral position) .......... 30%
 10° ................................... 43
 20° ................................... 57
 30° (full inversion) .................. 70
Joint ankylosed at:
 0°[*] (neutral position) .......... 30%
 10° ................................... 50
 20° (full eversion) ....................... 70
 ANKLE JOINT
 When Two Ranges of Motion are Involved
 Restricted Motion
 1. Calculate separately and record impairment of lower
extremity contributed by each range of motion.
 2. Add impairment of lower extremity values contributed by ALL
ranges of motion. The sum of these values is impairment of lower
extremity contributed by ankle joint.
 Impairment of
 Example Lower Extremity
10 degrees active DORSI-FLEXION ................. = 4%
10 degrees active PLANTAR-FLEXION ............... = 11
10 degrees active INVERSION ..................... = 4
10 degrees active EVERSION ...................... = 2
 ___
(4 + 11 + 4 + 2 = 21) 21%
 Ankylosis
 1. Calculate separately and record impairment of lower
extremity contributed by ankylosis in each position.
 2. The largest ankylosis impairment value is the impairment
of the lower extremity contributed by ankle joint.
 Impairment of
 Example Lower Extremity
Ankle joint ankylosed at:
10 degrees DORSI-FLEXION ........................ = 50%
10 degrees INVERSION ............................ = 43
 The largest ankylosis impairment value is 50%; therefore, lower
extremity is 50% impaired by ankylosed ankle joint.

ANKLE JOINT
Technique of Measurement: Inversion-Eversion
Restricted Motion
1. Place patient in neutral position as shown in fig. 55. Note ankle is at right angle. The goniometer is not used.
2. Inversion: Starting from neutral position with patient inverting foot as shown in fig. 56, record range of motion as estimated by arc described by plantar surface of foot as it turns.
3. Eversion: With patient everting foot as shown in fig. 54, record range of motion as estimated by arc described by plantar surface of foot as it turns.
4. Consult (Restricted Motion) Table 37 for corresponding impairment of lower extremity.
Example: 20 degrees inversion from neutral position (0°) OR any 20 degree arc of retained active inversion = 2% impairment of lower extremity.
5. ADD lower extremity impairment values contributed by inversion and eversion. The sum of these values is impairment of lower extremity contributed by inversion and eversion of ankle.
NOTE: There may also be impairment of dorsi-plantar flexion which should be added.
Ankylosis
1. Estimate angle at which joint is ankylosed by angle of plantar surface of foot.
NOTES
[1] The applicable tables are set out in the appendix attached to the conclusion of this opinion.
[*] position of function
[*] position of function