405 So.2d 183 (1981)
Vernie M. SMITH, Appellant,
v.
SCHOOL BOARD OF LEON COUNTY, Florida, Appellee.
No. UU-369.
District Court of Appeal of Florida, First District.
August 26, 1981.
Larry Levy of Dickinson, Levy & Taylor, Tallahassee, for appellant.
Charles A. Johnson, Tallahassee, for appellee.
ERVIN, Judge.
Smith, a non-instructional employee of the Leon County School Board, appeals only that portion of a final administrative order *184 of the Board which approved a hearing officer's recommended order denying her back pay during the period of her suspension from employment. Smith raises two points: (1) Whether the Board erred in adopting the officer's recommended order that Smith's conduct constituted misconduct in office and "gross insubordination" within the ambit of Section 231.36(1), Florida Statutes, and (2) whether the Board's order penalized protected free speech and expression. Because of our disposition of the first point in favor of Smith, we do not reach the constitutional issue assigned under point two.
The appellant was suspended on May 10, 1979, with pay, pending a final hearing on the question whether she should be permanently discharged. The suspension was prompted by what the hearing officer referred to as "the evaluation form incident" which occurred on May 9, 1979. On that date, Conway McGee, the Director of Transportation for the Leon County School System, and the appellant's immediate supervisor, called the appellant into his office and handed her a copy of an evaluation of her work performance. The evaluation indicated an overall unsatisfactory rating; six out of ten categories on the form were marked as unsatisfactory. After the appellant read the evaluation report, she became upset, evincing her displeasure by crumpling the form into a small ball and throwing it toward McGee's desk, stating at the same time, "This is what I think of this and you too."
On June 12, 1979, the superintendent brought formal charges alleging as grounds for dismissal misconduct in office, willful neglect of duty, gross insubordination, and incompetency. Some of the charges were based on the evaluation form incident, as well as several other work-related incidents which preceded, and formed the basis for the unsatisfactory evaluation. Later, on June 26, 1976, the School Board considered the charges, suspended Smith from employment without pay, and referred the charges for hearing before the Division of Administrative Hearings. The hearing officer's recommended order rejected all charges, except those based on the evaluation form incident, as baseless. Concerning that incident, the order found that the appellant had been guilty of gross insubordination and misconduct in office; that her acts displayed disrespect to her superior, and that she had flaunted McGee's authority in front of her fellow employees. The incident, in the hearing officer's view, was the culmination of growing friction between the appellant and McGee; friction caused by a relationship characterized by the officer as a "personality conflict emerging between a new supervisor and a subordinate with many years of service." In his opinion, "the culpability for such conflict [should be] shared in part by both parties." On the other hand, the officer noted the appellant's past, long-standing good record, and then recommended that her nine months' suspension without pay be considered sufficient punishment; that she be reinstated and transferred to another position, and that an official reprimand be placed in her file. The School Board adopted the hearing officer's findings of fact and conclusions of law and accepted his recommendations.
We conclude from this record that the Board erred in denying appellant pay during the nine-month suspension period because appellant's conduct neither constituted "misconduct in office" nor "gross insubordination" as those terms are used in Section 231.36(6), Florida Statutes (1979).
Parenthetically, we observe that Section 231.36(6) does not define the terms "misconduct in office" or "gross insubordination." The hearing officer's order points out in its second conclusion of law that those terms are defined in Chapter 6B-4, Florida Administrative Code; it also correctly acknowledges that they apply to instructional personnel only  not to a school district's administrative employees. Nevertheless, the definitions of those terms serve as useful analogues to the issues before us. Rule 6B-4.09(3) provides:
Misconduct in office is defined as a violation of the Code of Ethics of the Education Profession so serious as to impair the *185 individual's effectiveness in the school system.
Rule 6B-4.09(4) provides:
Gross insubordination or willful neglect of duties is defined as a constant or continuing intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority. (e.s.)
Were the above definitions applicable to the appellant, she unquestionably would have been absolved from guilt since her conduct fits within neither of the two definitions.
As to the latter charge, her actions did not meet the definition of "gross insubordination" since they were an isolated outburst and could not have been deemed "constant or continuing." Moreover, the record did not establish, nor did the hearing officer find, that the appellant refused to obey any order of McGee's, unless the evaluation report given to Smith could somehow be considered an order. If it were, the "order" could hardly be deemed a reasonable one since related charges that were based upon the unsatisfactory items in the evaluation report were later determined to be without foundation.
The appellant's acts could at most be described as contemptuous. The word "contemptuous" is not synonymous with the word "insubordination" as those words are commonly used. See definition in The American Heritage Dictionary of The English Language, New College Edition (1976). We are cognizant that our decision in Muldrow v. Board of Public Instruction of Duval County, 189 So.2d 414 (Fla. 1st DCA 1966), appears to equate the word "insubordination" with the word "contumacious"; however, the Muldrow court was addressing a charge of "insubordination" under the Duval County Teacher Tenure Act that superseded the provisions of Chapter 231.36(6), as to teachers within the Duval County School District. Section 231.36(6), the statute upon which the charges here are based, imposes upon the Board proof of a more serious degree of conduct than mere insubordination. Thus, even if Smith's response to her superior's evaluation could be characterized as insubordinate, one isolated act of contempt is not synonymous with "gross insubordination."
Nor did the appellant's conduct meet the definition of "misconduct in office." Rule 6B-4.09(4) requires that an act of misconduct be a violation of the Code of Ethics as outlined in Rule 6B-1. The thrust of the code deals with a teacher's relationships with the public or with the school administration as it affects the public. Courts in other jurisdictions have generally construed the term as requiring that the employee's conduct adversely affect her relationship with the public. See generally 27 Words and Phrases, Misconduct in Office, 492-496 (1961). Here the appellant's behavior was purely an interoffice dispute which occurred after office hours. This incident  as the record before us reflects  had no bearing on her exercise of her duties to the public. See Texton v. Hancock, 359 So.2d 895 (Fla. 1st DCA 1978). Cf. Tomerlin v. Dade County School Board, 318 So.2d 159 (Fla. 1st DCA 1975).
In conclusion, the appellant's actions in response to her evaluation report, forceful though they were, did not constitute "gross insubordination" or "misconduct in office"[1] as those words are used in their normal meaning. If the Board wishes to articulate policy which sets different standards of conduct for its administrative employees than for its instructional personnel, it is not precluded from doing so as long as there is a record foundation in support of that policy. See Florida Cities Water Co. v. Florida Publ. Serv. Comm'n., 384 So.2d 1280 (Fla. 1980). Cf. Anheuser-Busch, Inc. v. Dept. of Business Regulation, 393 So.2d 1177 (Fla. 1st DCA 1981). Additionally, since the provisions of Section 231.36 are *186 penal in nature, School Board of Pinellas County v. Noble, 384 So.2d 205 (Fla. 1st DCA 1980), and the loss of back pay is a serious penalty, the analysis in Bowling v. Dept. of Insurance, 394 So.2d 165 (Fla. 1st DCA 1981), is instructive. There we required an elevated standard of competent substantial evidence, stating:
[W]hen the standards of conduct to be enforced are not explicitly fixed by statute or by rule, but depend on ... debatable expressions ...; when the conduct to be assessed is past, beyond the actor's power to conform it to agency standards announced prospectively; and when the proceeding may result in the loss of a valuable business or professional license, the critical matters in issue must be shown by evidence which is indubitably as "substantial" as the consequences.
394 So.2d at 172.
Here, as in Bowling, the Board's abstract statutory interpretations, based merely on the conduct of the appellant for which the hearing officer found McGee also partially responsible, was not supported by such a record foundation. See also Decor Painting v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981). Cf. Texton v. Hancock, supra.
We are aware that Bowling's elevated standard of proof only applies to adjudicative rather than legislative facts,[2] and we realize that the instant case involves a combination of both. Nevertheless, as Bowling also observes, even though the facts involved are termed legislative, "if they are reasonably susceptible to some kind of proof, ...", the responsible agency should offer evidence in support of them. See 394 So.2d at 174, n. 17. Here the Board presented no such evidence as to either category, nor offered any explanation why the missing legislative facts were not susceptible to conventional proof.
That portion of the Board's order sustaining Smith's suspension without pay is vacated.
LILES, WOODIE A. (Retired) and PEARSON, TILLMAN (Retired), Associate Judges, concur.
NOTES
[1] We note that if the evidence here had supported a finding that appellant was guilty of certain criminal acts, then dismissal would no doubt be justified under Section 231.36. See Ford v. Bay County School Board, 253 So.2d 728 (Fla. 1st DCA 1971); Texton v. Hancock, supra. As in Texton, however, the record here does not indicate that the appellant was guilty of any crime.
[2] "Adjudicative facts are the facts about the parties and their activities, businesses and properties... . Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law and policy and discretion." 1 Davis, Administrative Law Treatise, Sec. 702 at p. 413, cited in Bowling, 394 So.2d at 174, n. 17.