415 So.2d 811 (1982)
Henry DEINEMA, Appellant,
v.
PIERPOINT CONDOMINIUMS and Insurance Company of North America, Appellees.
No. AB-462.
District Court of Appeal of Florida, First District.
June 18, 1982.
*812 Robert H. Schott of Gamba, Junod & Schott, Palm City, for appellant.
Harry D. Robinson, West Palm Beach, Fla., for appellees.
ERVIN, Judge.
In this workers' compensation action, Deinema urges four points on appeal. We reverse in part as to the first and fourth points raised, but affirm the remaining points.
Deinema first contends that the deputy erred in refusing to award wage-loss benefits from March 14, 1980, through December 4, 1980. We agree, and reverse and remand. As to this point, the record discloses that the parties stipulated that Deinema had achieved MMI in March, 1980, as to an industrial accident which occurred in September, 1979, and for which he had received TTD benefits. The date of MMI was grounded upon an examination conducted by a Dr. Greene as of that date, from which he determined that claimant had suffered no permanent disability resulting from his industrial injury. In April, 1980, Deinema filed a written claim for additional TTD benefits,[1] and he continued to seek the unauthorized treatment of Dr. DiBartolo, which he finally obtained on December 4, 1980. It was at that time DiBartolo determined that Deinema had sustained a 10% permanent impairment as a result of the industrial accident. Although the deputy refused to award any wage-loss benefits that were claimed prior to December 4, 1980, he reserved jurisdiction for the purpose of awarding them after such date pending a report from a Dr. Moll as to claimant's condition.
The deputy interpreted Section 440.15(3)(a)2, Florida Statutes (1979),[2] as requiring that a permanent impairment rating be in existence before December 4, 1980, as a predicate to the award of any wage-loss benefits. The deputy's reliance on Section 440.15(3)(a)2 is misplaced. The statute clearly requires that "impairment benefits be paid within 20 days after the carrier has knowledge of the impairment." It does not bar claimant's entitlement to benefits that may have accrued before the carrier's knowledge of same. Deinema was obviously unable to request impairment benefits following MMI until he was examined by Dr. DiBartolo, and he then amended his claim by later requesting them at the hearing.
The more significant question is whether the e/c was prejudiced by the untimely notice provided by the claimant. The decretal portion of the order does not discuss the significance of this failure. Nevertheless, we have held that the untimely filing of wage-loss forms does not require a denial of such benefits unless the e/c has been prejudiced because of the untimeliness. Stahl v. Mike Gordon's Seafood Restaurant, 408 So.2d 808 (Fla. 1st DCA 1982). See also, Gall Silica Mining Co. v. Sheffield, 401 So.2d 1169 (Fla. 1st DCA 1981). The e/c makes no contention that it was prejudiced by such failure, and we find nothing in the record suggesting prejudice. At any event, on remand, the claimant should submit promptly the required wage-loss forms.
As to Point II, we agree that the deputy commissioner properly reserved jurisdiction for the purpose of awarding wage-loss *813 benefits pending a medical report by Dr. Moll, a physician appointed by the deputy. That procedure is expressly authorized by Section 440.25(3)(b), Florida Statutes (1979),[3] on those occasions when medical testimony at a hearing is conflicting. Here, the record clearly establishes the medical testimony was conflicting. Moreover, the deputy's order does not reflect, as the appellant contends, that the deputy relinquished his power to decide the issue of wage-loss to Dr. Moll. Cf. Alderform Interior System v. Chavez, IRC Order 2-3062 (1976). To the contrary, the deputy's order merely requested a third medical opinion to aid him in making his final decision.
As to Point III, we agree with the deputy's order that Dr. DiBartolo's rating was not in compliance with Section 440.15(3)(a)3. See Decor Painting v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981). The deputy was correct in finding that, despite the inadequacy of Dr. DiBartolo's rating, his opinion of disability created a conflict with Dr. Greene's (see Point I). Dr. DiBartolo's failure to apply the AMA tables rendered his evaluation incompetent only as to the amount of disability  not to the extent that some permanent disability in fact existed. Moreover, on remand, the deputy may, within his informed discretion, accept a revised medical report from Dr. DiBartolo translating his original medical finding into a new rating through the use of the AMA tables.
As to Point IV, however, we conclude that the deputy erred in refusing to order the e/c to pay for the requested evaluation and treatment of Dr. DiBartolo performed before the date of hearing on February 17, 1981. After the claimant was treated by Dr. Greene in March, 1980, he requested the care of Dr. DiBartolo. Instead, the e/c authorized three alternatives: Doctors Moll, Murphy or Stalker. The claimant reported that he would accept treatment from either Moll or DiBartolo. The e/c then authorized Dr. Fraraccio, an associate of Dr. Moll, to examine claimant. The claimant eventually became dissatisfied with Dr. Fraraccio's treatment and again requested Dr. DiBartolo. In response to this request, the e/c reauthorized Dr. Fraraccio. The claimant, ignoring the e/c's action, went to Dr. DiBartolo.
The e/c's reauthorization of Dr. Fraraccio was not, under the circumstances, in compliance with the express provisions of Section 440.13(2), Florida Statutes (1979), requiring the e/c "to select another physician to treat the injured employee" if the claimant objects to the medical treatment provided. The only statutory exception to the requirement that another physician be selected to furnish treatment is the deputy's determination that "a change in medical attendance is not in the best interests of the injured employee... ." Here the deputy made such a finding; yet, that pronouncement was belied by his later finding of a conflict in the medical evidence, based upon both claimant's and DiBartolo's testimony, that claimant had sustained a permanent impairment, causing him to appoint another physician for the purpose of determining whether claimant had suffered a permanent injury. Accordingly, the deputy should have directed the e/c to pay for the treatment furnished by DiBartolo, since the record reveals that claimant's dissatisfaction with the e/c's selection of physicians was for good cause. Cf. Schult Mobile Home Corp. v. Walling, 384 So.2d 251 (Fla. 1st DCA 1980).
*814 Affirmed in part, reversed in part, and remanded for further consistent proceedings.
McCORD and SHAW, JJ., concur.
NOTES
[1] The written claim made no request for wage-loss benefits, although the claimant requested them at the final hearing, conducted on February 17, 1981.
[2] That section provides:

Once the employee has reached the date of maximum medical improvement, impairment benefits are due and payable within 20 days after the carrier has knowledge of the impairment. (e.s.)
[3] That section provides in material part:

When there is a conflict in the medical evidence submitted at the hearing, the deputy commissioner may designate a disinterested doctor to submit a report or to testify in the proceeding, after such doctor has reviewed the medical reports and evidence, examined the claimant, or otherwise made such investigation as appropriate. The report or testimony of any doctor so designated by the deputy commissioner shall be made a part of the record of proceeding and shall be given the same consideration by the deputy commissioner as is accorded other medical evidence submitted in the proceeding; and all costs incurred in connection with such examination and testimony may be assessed as costs in the proceeding, subject to the provisions of s. 440.13(3)(a).