435 So.2d 399 (1983)
Larry J. RUTAN, Appellant,
v.
PASCO COUNTY SCHOOL BOARD, Appellee.
No. 82-2486.
District Court of Appeal of Florida, Second District.
July 29, 1983.
Steven A. Been, Asst. Gen. Counsel, Florida Educ. Ass'n/United, Tallahassee, for appellant.
Thomas P. McAlvanah of Gibbs, McAlvanah & Hanson, P.A., Zephyrhills, for appellee.
CAMPBELL, Judge.
Larry Rutan was employed as a junior high school shop teacher at Pasco Junior High. In March, 1982, Rutan learned that, due to certain allegations concerning his teaching abilities,[1] a recommendation had been made to the school board to return him to an annual contract. In June, 1982, the school board held a hearing to consider these allegations, and ultimately the board did decide to downgrade Rutan's contract status. He appealed that decision to this court, and we affirmed the school board without opinion. Rutan v. Pasco County School Board, 434 So.2d 895 (Fla. 2d DCA 1983).
On May 28, 1982, Rutan distributed a survey to his classes that the school superintendent later alleged had been drafted for possible use at Rutan's impending contract hearing.[2] At the hearing, Rutan denied that he intended such use.
On June 2, the day following Rutan's contract hearing, two of his classes asked questions about the hearing, about his employment status, and about the nature of teacher contracts in general. Rutan discussed these issues with the students. One class drafted a petition during class and circulated it. When class was over, they told Rutan they were taking it to the principal's *400 office.[3] Rutan did not dissuade the students from doing this, and a number of them then trooped down to the principal's office between their class periods and presented this petition to Mrs. Adams, the principal.
After receiving this petition, Mrs. Adams called one of Rutan's students to the office and asked him what had happened in class. However, she never asked Rutan about this incident.
The next day, some of Rutan's students asked more questions, there was an abortive petition drive by one of his other classes, and some students posted signs supporting Rutan on the walls of the school. Mrs. Adams formally notified the school superintendent, who then suspended Rutan with pay effective June 4 for "gross insubordination, misconduct in office, and willful neglect of duty." The school board later held a hearing and then issued a final order that found Rutan guilty of gross insubordination or willful neglect of duty pursuant to chapter 6B-4.09, Florida Administrative Code. Rutan appealed, and we now reverse.
Pursuant to section 231.36(6),[4] Florida Statutes (1981), the superintendent charged Rutan with gross insubordination or willful neglect of duty and misconduct in office as defined in chapter 6B-4.09, Florida Administrative Code. Because the final order found Rutan guilty only of a violation of rule 6B-4.09(4), we limit our review to that specific finding.
Rule 6B-4.09(4) states that "[g]ross insubordination or willful neglect of duties is defined as a constant or continuing intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority." This administrative rule indicates that to be guilty of gross insubordination or willful neglect of duty, the teacher must intentionally refuse to obey a reasonable, direct order, and this refusal must be done in a constant and continuous manner. Constant is defined as: "1. Continually recurring; persistent. 2. Unchanging in nature, value or extent; invariable. 3. Steadfast in purpose, loyalty, or affection; ..." The American Heritage Dictionary of the English Language 284 (New College Edition, 1979). Continuous means: "1. Extending or prolonged without interruption or cessation; unceasing... ." Id., at 288-89. We do not believe that Rutan's conduct fits within these definitions.
In Smith v. School Board of Leon County, 405 So.2d 183 (Fla. 1st DCA 1981), the court vacated a lower court order suspending the appellant without pay. In that case, the appellant, having received a poor evaluation from her supervisor, crumpled the evaluation form and tossed it on the supervisor's desk saying: "This is what I think of this and you too." 405 So.2d at 184. Although the appellant was a noninstructional school board employee, the court used rules 6B-4.09(3) and 6B-4.09(4) as guides to its decision since appellant had been found guilty of misconduct in office and of gross insubordination or willful neglect. The court concluded that the appellant did not violate rule 6B-4.09(4) because there was no evidence of a refusal to obey an order and because the conduct was only an isolated outburst, neither constant nor continuous. The court also found that this conduct did not amount to misconduct in office as defined in rule 6B-4.09(3). For another recent discussion of rule 6B-4.09(4), see Reynolds v. School Board of Flagler County, 417 So.2d 277 (Fla. 5th DCA 1982) (Sharp, J., dissenting).
Like the situation in Smith, the record does not demonstrate that Rutan ever refused to obey any orders from anyone. In fact, he apparently never received any orders *401 regarding his conduct prior to his suspension. This conduct was certainly not as contemptuous as that described in Smith, and even if that were not the case, his conduct was neither constant nor continuous within the meaning of rule 6B-4.09(4).
Accordingly, we reverse the finding of the school board and remand for treatment consistent herewith. Because we conclude that Rutan was not guilty of willful neglect of duty, we need not consider the remaining point raised by Rutan.
HOBSON, A.C.J., and LEHAN, J., concur.
NOTES
[1] Specifically, it was alleged that Rutan had not adequately supervised students doing shop work and that he had belittled some students for not doing work.
[2] These surveys were used, according to Rutan, several times a year. When he gave this particular survey, Rutan added the following question at the bottom of the page: "Does Mr. Rutan try to make a student feel bad because he is unable to do the work?"
[3] The petition read: "We the students of ... class feel that he is not guilty of the charges filed against him. We would like for him to remain as our teacher for this year and years to come. 5th."
[4] Any member of the district administrative or supervisory staff and any member of the instructional staff, including any principal, may be suspended or dismissed ... the charges ... must be based on immorality, misconduct in office, incompetency, gross insubordination, willful neglect of duty, drunkenness, or conviction of any crime involving moral turpitude.