442 So.2d 1050 (1983)
George PECK, III, Appellant,
v.
PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS, Appellee.
No. AQ-126.
District Court of Appeal of Florida, First District.
December 16, 1983.
Richard A. Sicking of Kaplan, Sicking, Hessen, Sugarman, Rosenthal & De Castro, Miami, for appellant.
Melanie Jacobson, West Palm Beach, for appellee.
Before ERVIN, C.J., and MILLS, ROBERT P. SMITH, Jr., BOOTH, LARRY G. SMITH, SHIVERS, WENTWORTH, JOANOS, THOMPSON, WIGGINTON, NIMMONS and ZEHMER, JJ.
PER CURIAM.
Claimant, George Peck (Peck), appeals the deputy commissioner's order denying permanent partial disability benefits for a hearing loss not covered by the guidelines established by the American Medical Association (AMA). We reverse.
Because our reversal of the deputy commissioner's order requires us to recede from former opinions of this court reaching a contrary result, it is necessary for the entire court to participate in the decision *1051 under the en banc provisions of Florida Rule of Appellate Procedure 9.331.
Peck, a forty-one year old patrolman, had been employed by the Palm Beach County Sheriff's Department since 1974. On November 1, 1978, Peck was required to qualify on the firing range, as he had done two to four times per year since 1974. He fired 50-100 times with a .357 magnum and ten times with a shotgun, with other officers firing near him. Peck testified that to his knowledge protective ear muffs were not required at that time, but since that time they are now required. Following the firing test, Peck noticed the loss of hearing he usually experienced, but he also experienced pain in his ears. The loss of hearing persisted. On May 25, 1979, Peck was examined by Dr. Murray, an ear, nose and throat specialist, who diagnosed permanent, high frequency deafness resulting from nerve damage in both ears. Dr. Murray characterized the injury as a classic case of noise-induced deafness, causally related to repeated exposure to gunfire at the firing range. He explained that Peck suffered a 45-50% hearing loss for the higher frequencies of 2,000-8,000 Hertz, but that for lower range frequencies, below 2,000 Hertz, Peck had no hearing disability. This translated into Peck's being able to hear lower register tones, such as a man's voice, but not being able to hear higher pitched sounds, such as a siren or burglar alarm. Additionally, Dr. Murray stated that Peck suffered "recruitment," i.e. if a sound exceeded a certain frequency, it would hurt his ears. Dr. Adams, a clinical audiologist, testified as an expert on the employer's behalf that based upon Peck's audiometric tests and the AMA Guides, Peck did not have a hearing loss that could be rated. The AMA formula for determining disability due to hearing loss does not measure impairment beyond 2,000 Hertz, such as Peck suffered. The deputy commissioner recognized the requirement that he measure Peck's hearing loss in accordance with the AMA Guides, as determined in Tallahassee Memorial Regional Medical Center v. Snead, 400 So.2d 1016 (Fla. 1st DCA 1981), and found that Peck did not have any permanent hearing loss that was measurable. Notwithstanding, he found that Peck suffered a compensable injury by accident which arose out of and in the course of employment on November 1, 1978.
The deputy commissioner's recognition of the requirement of referencing a rating of permanent impairment to the AMA Guides, as provided by Section 440.15(3)(a)3, is consistent with the court's opinions in Decor Painting & Iowa Mutual Insurance Co. v. Rohn, 401 So.2d 899 (Fla. 1st DCA 1981) and Jamar Sportswear, Inc. v. Miller, 413 So.2d 811 (Fla. 1st DCA 1982). Section 440.15(3)(a)3 mandates the Division of Workers' Compensation of the Department of Labor and Employment Security to "establish and use a schedule for determining the existence and degree of permanent impairment based upon medically or scientifically demonstrable findings." The statute further provides: "On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereof." Keying in on the "August 1, 1979" language of the amended statute, a number of our decisions, while sustaining awards not based on evidence reflecting the use of the guides, have nonetheless observed that such awards, entered on or after August 1, 1979, were "technical violations" of Section 440.15(3)(a)3. Snead, at 1017; Vannice Construction Co. v. Silverman, 419 So.2d 369 (Fla. 1st DCA 1982); Dade American Hospital Supply v. Perez, 417 So.2d 296, 297 (Fla. 1st DCA 1982).
Although it does not appear from any of the above opinions whether the court was asked if Section 440.15(3)(a)3's provisions could be retrospectively applied to injuries which had occurred before the statute's effective date, the consequence of our decisions in Rohn and Jamar was to do just that, since they disapproved impairment ratings, not based on the guides, of injuries which had been sustained before August 1, 1979, the date Section 440.15(3)(a)3 became *1052 law. We now recede from Rohn and Jamar, as well as all other opinions of this court holding similarly, because they did not properly take into account the effective date the guides were required to be used.
Section 440.15(3)(a)3's provision that permanent impairment ratings be based on objective standards first appears in Section 10, Chapter 79-40, Laws of Florida. As then worded, Section 10  instead of simply declaring as does the final statute that the guides shall be used as of August 1, 1979  provided in part: "On the effective date of this act and pending the adoption of a permanent schedule, Guides to the Evaluation of Permanent Impairment, ... by the American Medical Association, shall be the temporary schedule... ." (e.s.) Section 127 applied Chapter 79-40 "to all claims for injury arising out of accidents occurring on or after July 1, 1979."
During the 1979 legislative session, Chapter 79-40 was amended by Chapter 79-312. Although minor changes were made to Section 440.15(3)(a)3 by Section 8 of the act, the language arising from Chapter 79-40 remained intact in requiring the temporary use of the guides "[o]n the effective date of this act... ." The July 1, 1979 effective date of Chapter 79-40 was later amended, however, to "apply to all claims for injury arising out of accidents occurring on or after August 1, 1979." Chapter 79-312, Sections 23, 25, Laws of Florida (e.s.).[1] Section 25 specifically narrowed the effective date to Sections 6-20 of Chapter 79-312. Significantly, Section 8 of the act comprises the permanent impairment provisions of Section 440.15(3)(a)3.
From our examination of the above session laws, we find that the legislature has unequivocally expressed its intent as to the date the temporary guides are to be used in rating the degree of permanent impairment: They are to be used in "all claims for injury arising out of accidents occurring on or after August 1, 1979." (e.s.) Unfortunately this declaration was not carried over in the language of Section 440.15(3)(a)3, as published in the compiled 1979 general statutes. No reviser's note accompanies the statute as to why the complete statement contained in Section 23 or 25 of the enrolled act was not employed.
If this appeal had been filed before the Official 1979 Statutes were adopted by the 1981 legislature, and if there were any genuine question of conflict between the enrolled act and the published statute, the rule of construction to be applied would be simple: The enrolled act is the best evidence of what the law is as to the matter dealt with and would prevail. See Preface to Florida Statutes, Vol. I, 1981 Florida Statutes at vii. This rule does not, however, apply since the order on review was not entered until November 16, 1982, and our jurisdiction had not vested until after the publication of the 1981 statutes. Cf. McCulley Ford, Inc. v. Calvin, 308 So.2d 189, 195 (Fla. 1st DCA 1974). If it were determined that there was conflict between the two, we would be faced with the contrary rule recognizing that those portions of the statutory law of the preceding regular session which were adopted by the next succeeding regular session constitute the best evidence of what the law is. See Preface to Florida Statutes, supra. Before we apply either rule of construction, however, it is necessary for us to decide whether there is in fact a conflict.
Due to the obvious expression of legislative intent appearing in the session law, we will not presume that the revised statute represents a deliberate attempt by the Joint Legislative Management Committee to make a substantive change in the statutory law  an action which is in excess of the authority granted it. Foley v. State, 50 So.2d 179, 184 (Fla. 1951); Jones v. Christina, 184 So.2d 181, 184 (Fla. 1966). We are confident that the purpose of the revisers in substituting the words "August 1, 1979" in Section 440.15(3)(a)3 for "the effective date of this act" was simply to reference *1053 the language of Section 8, Chapter 79-312, to that contained in Sections 23 and 25 of the act, describing the conditions under which the act was to take effect. The revision, under those circumstances, was carried out pursuant to the provisions of Section 11.242(1), Florida Statutes (1979), for the purpose of "removing inconsistencies, redundancies and unnecessary repetitions ... ."
In view of the unambiguous language employed in Section 127 of Chapter 79-40, and in Sections 23 and 25 of Chapter 79-312, we now hold that the reference to August 1, 1979 in Section 440.15(3)(a)3 requires that the temporary guides be used to gauge the degree of permanent impairment only as to claims for injury arising out of accidents occurring on or after August 1, 1979. Accordingly, we recede from Rohn and Jamar and from any language in other decisions indicating a contrary result.
The deputy commissioner's order insofar as it denied permanent partial disability benefits based upon our previous decisions is REVERSED and this cause is REMANDED for redetermination consistent with this opinion.
ERVIN, C.J., MILLS, ROBERT P. SMITH, Jr., LARRY G. SMITH, SHIVERS, JOANOS, WIGGINTON, NIMMONS and ZEHMER, JJ., concur.
THOMPSON and BOOTH, JJ., specially concur.
WENTWORTH, J., dissents with opinion.
THOMPSON, Judge, specially concurring.
I concur in the result reached by the majority on the issue determined en banc and would recede from the prior decisions of this court which interpret § 440.15(3)(a)3., Fla. Stat. (1979) as requiring that permanent impairment be determined in accordance with the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides) for accidents occurring prior to August 1, 1979. Application of this statute to pre-August 1, 1979 accidents results in an unconstitutional impairment of the claimant's contract with his employer and his employer's insurance carrier.
Hardware Mutual Casualty Co. v. Carlton, 151 Fla. 238, 9 So.2d 359 (1942), held that an employee who sustained an injury prior to the effective date of a 1941 amendment to the workmen's compensation law, which allowed attorney's fees against the employer and insurance carrier, was not entitled to an attorney's fee. In so holding the court stated:
This statute substantially changed the liability of the employer and the insurance carrier from what it was when the injury occurred.
The acceptance of the application of Workmen's Compensation Statutes, Acts 1935, c. 17481, by employer, employee and insurance carrier constitutes a contract between the parties embracing the provisions of the statutes as they may exist at the time of any injury compensable under the terms of the statute. See Chamberlain v. Florida Power Corporation, 144 Fla. 719, 198 So. 486; Liberato v. Royer, 270 U.S. 535, 46 S.Ct. 373, 70 L.Ed. 719.
It, therefore, follows that when claimant was injured in November of 1940, the Act of 1941, supra, was not in existence and was not a part of the contract.
In Page on Contracts, Vol. 6, Sec. 3674, the writer says: "The obligation of a contract is impaired when the substantive rights of the parties thereunder are changed. The extent to which their substantive rights are impaired is probably immaterial since they are entitled to their rights under the original contract without any change."
Id. at 9 So.2d 359, 360. See also Sullivan v. Mayo, 121 So.2d 424 (Fla. 1960); Ship Shape v. Taylor, 397 So.2d 1199 (Fla. 1st DCA 1981).
In order for a permanent impairment to result from a post-July 31, 1979, injury, such as the one in this case, it must be based on medically or scientifically demonstrable *1054 findings determined in accordance with the AMA Guides. However, prior to August 1, 1979, a finding of permanent disability could be based on any competent medical testimony or even on purely subjective findings. If the use of AMA Guides is required to determine whether the claimant in this case had a compensable claim for wage loss benefits or for permanent partial disability under the pre-1979 law, the claimant is not entitled to any of those benefits because there is no competent substantial evidence of a permanent impairment determination in accordance with the AMA Guides. However, if use of the AMA Guides is not required, there is competent substantial evidence that the claimant has sustained a permanent disability or impairment of his hearing. Although the extent of the impairment of contract is immaterial, I can conceive of no greater impairment of contract and of the claimant's constitutional rights than the retroactive application of an amendment that would prevent him from receiving compensation that he was entitled to at the time his accident occurred. The claimant's substantive rights were substantially changed by the 1979 amendment and its application would prevent the claimant from receiving benefits he was entitled to under the law in effect at the time of his injury.
BOOTH, J., concurs.
WENTWORTH, Judge, dissenting.
I dissent, and would conclude that our earlier decisions correctly construed § 440.15(3)(a)3 as a burden of proof amendment uniformly applicable after August 1, 1979, to the longstanding problem of determination of permanent impairment for compensation purposes. Sections 26 and 128 of Chapter 79-312, providing the act "shall take effect on August 1," should control all procedural amendments in the act not specifically excluded therefrom. Cf., Summerlin v. Tramill, 290 So.2d 53 (Fla. 1973); Walker & Laberge Inc. v. Halligan, 344 So.2d 239 (Fla. 1977); Myers v. Carr Construction Co., 387 So.2d 417 (Fla. 1st DCA 1980). Sections 25 and 127, limiting the new act (except for forum changes) to accidents after August 1, should of course control substantive amendments but do not in my opinion constitute specific legislative alteration of the general rule on procedural amendments, most particularly in view of the internal provision in the section in question that on the effective date the "Guides ... shall be used for the purposes hereof."
I would note also a confusion in terminology because the stated purpose of the section is not that a physician's rating be "referenced to" the Guides, and not that an award be based on "evidence reflecting the use of the guides." The mandate instead is for the "use [of] a schedule for determining the existence and degree of impairment," a function of the deputy, based on evidence which in substance meets the Guide's standards whether or not a medical witness uses or references those prescriptions.
NOTES
[1] The provisions of Sections 23 and 25 of Chapter 79-312 are found in the 1979 Official Florida Statutes at Section 440.60.