ALTENBERND, Judge.
 

 Mary L. Cropsey appeals a final order of the School Board of Manatee County, Florida, terminating her employment as a teacher. The School Board terminated Ms. Cropsey solely because, on the advice of her lawyer, she declined the “request” of her principal to attend a conference, scheduled on twenty-four hours’ notice and at which she could not be represented by her lawyer, to “discuss” alleged violations of FCAT procedures that could have led to the state attorney’s filing an information charging her with a first-degree misdemeanor. After holding an administrative hearing, the School Board ultimately de
 
 *353
 
 termined that the charges of violating the FCAT procedures had not been proven but that Ms. Cropsey should be terminated because her decision to follow the advice of her attorney constituted “gross insubordination,” “willful neglect” of her duties, a failure to “strive to achieve and sustain the highest degree of ethical conduct,” and a failure to cooperate fully with an investigation. As further explained in this opinion, we conclude that no competent, substantial evidence supported this determination and that the order of termination must be reversed.
 

 I.
 

 Ms. Cropsey is an experienced teacher who was working in her first year of full-time employment at Mills Elementary School during the 2006-07 school year. For reasons that are not well developed in our record, the school principal, Mr. Michael Rio, decided in February 2007 not to retain Ms. Cropsey at Mills Elementary for the 2007-08 school year and also decided not to recommend her for reappointment within the school system.
 

 Ms. Cropsey believed that Mr. Rio was discriminating against her. On March 7, 2007, she met with another school board administrator to formally complain about this perceived discrimination. On March 8, near the end of the school day, Ms. Cropsey received a letter in memorandum format from Mr. Rio, stating:
 

 Mrs. Cropsey,
 

 The purpose of this letter is to let you know that there have been allegations made regarding violation of FCAT procedures. These allegations need to be discussed with you. Your presence is requested Friday, March 9, 2007 at 2:45 pm in the Virgil Mills Elementary School conference room. You may bring representation if you would like.
 

 Thanks for your cooperation.
 

 Michael F. Rio
 

 Principal
 

 Mills Elementary
 

 Although evidence indicates that the timing of this letter, falling a day after Ms. Cropsey’s claim of discrimination, was purely coincidental, Ms. Cropsey was suspicious of these circumstances. She had recently administered the FCAT to her third-grade class. She called her husband, who suggested that she consult an attorney.
 

 Ms. Cropsey immediately called an attorney, Mr. Charles Britt, and managed to meet with him that afternoon. The attorney happened to know the School Board’s attorney, John Bowen, and was also aware that certain misconduct in the administration of the FCAT could constitute a first-degree misdemeanor.
 
 See
 
 § 1008.24(2), Fla. Stat. (2006).
 

 It is undisputed that Mr. Britt called Mr. Bowen and was informed that the statement, “you may bring representation if you would like,” in the principal’s letter did not include any attorney but referred only to a union representative.
 
 [1]
 
 The entire content of the discussion between the two lawyers is not contained in the record, and only the School Board’s attorney, Mr. Bowen, was a witness at the administrative hearing. In his testimony at the hearing, Mr. Bowen explained that Mr. Britt told him that he did not want his client giving a statement under these circumstances. Mr. Bowen then told Mr. Britt to give him something in writing, stating that his client
 
 *354
 
 was declining to come to the interview. Mr. Bowen did not tell Mr. Britt that if he delivered such a letter, Mr. Bowen would advise the School Board that the letter was grounds to terminate Ms. Cropsey. As explained later, Mr. Bowen interpreted the law to give Ms. Cropsey no choice but to appear for the interview and discuss this potential misdemeanor without her attorney.
 

 After his conversation with Mr. Bowen, Mr. Britt wrote a letter stating, in pertinent part:
 

 Dear Sirs,
 

 Please let this letter serve as my letter of representation of Mrs. Mary Crop-sey. ... Recently, Mr. Mike Rio, principal at that school informed Mrs. Crop-sey that there have been “allegations regarding violation of FCAT procedures” against her....
 

 I can assure you that I and Mrs. Crop-sey take these allegations very seriously and bearing in mind F.S. § 1008.24(2), you can understand our decision to decline
 
 any
 
 statement in reference to this type of allegation.
 

 Without further efforts to resolve this impasse, on March 13, 2007, the superintendent of the school district sent a letter to Ms. Cropsey, notifying her that he intended to recommend her termination and that she had a right to contest this decision at an administrative hearing. Ms. Crop-sey retained additional counsel and requested an evidentiary hearing.
 

 At the evidentiary hearing, the superintendent was represented by independent counsel. Mr. Bowen served as the School Board’s attorney and also testified concerning his discussions with Mr. Britt. Through the course of the proceeding, the superintendent attempted to prove that Ms. Cropsey had violated FCAT procedures while administering the test to her third-grade class and that she refused to honor the principal’s request to attend the meeting on March 9. The superintendent maintained that each of these grounds justified Ms. Cropsey’s termination. Following this lengthy evidentiary hearing, the School Board voted that the superintendent had failed to prove that Ms. Cropsey had violated the FCAT procedures but that she should be terminated for declining to appear without counsel for the March 9 “discussion.” Ms. Cropsey appeals that ruling to this court.
 

 II.
 

 The dispositive issue in this case is somewhat narrower than the arguments raised on appeal. We do not determine whether Ms. Cropsey had the right to counsel at the discussion with her principal. We do not reach the question of whether she had a Fifth Amendment right to refuse to discuss this matter with the principal or whether she would have had automatic immunity from prosecution if she had talked to him. Rather, we decide whether it was “gross insubordination,” “willful neglect” of a duty, or any of the other violations relied upon by the School Board, for Ms. Cropsey to follow the advice of her attorney and decline to attend this meeting after her attorney had discussed the matter with the School Board’s attorney.
 

 We review the School Board’s order terminating Ms. Cropsey for competent, substantial evidence.
 
 See
 
 § 120.68(7)(a), Fla. Stat. (2006). The School Board’s interpretation of a statute it is charged with enforcing is entitled to great deference.
 
 See BellSouth Telecomms., Inc. v. Johnson,
 
 708 So.2d 594, 596 (Fla.1998). Giving the School Board the benefit of the right to interpret its own rules, we are still left with evidence that establishes only that Ms. Cropsey, on very
 
 *355
 
 short notice, followed the reasonable advice of her attorney. We therefore conclude there is no competent, substantial evidence supporting the School Board’s ruling.
 

 As broadly discussed below, a somewhat complex body of case law governs the respective rights of a government employee and her employer when the employer threatens to terminate the employee for her failure to cooperate in an investigation. Many adult citizens are aware that the Fifth Amendment protects a person from being compelled to testify in a self-incriminating manner. But a school principal is not a police officer, and an employer, including a government agency, can often justifiably fire an employee who refuses to participate in an investigation into matters that may seriously affect the employer.
 

 In this setting, the case law has evolved to provide that “a government employee who has been threatened with an adverse employment action by her employer for failure to answer questions put to her by her employer receives immunity from the use of her statements or their fruits in subsequent criminal proceedings.”
 
 Sher v. U.S. Dep’t of Veterans Affairs,
 
 488 F.3d 489, 501 (1st Cir.2007). Such immunity arises because the government cannot use the threat of discharge to obtain incriminatory evidence against the employee.
 
 See Garrity v. New Jersey,
 
 385 U.S. 493, 500, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).
 
 [2]
 

 As a result of this automatic immunity, however, the employee may be disciplined or terminated for remaining silent in response to questions relating to the performance of employment duties.
 
 Gardner v. Broderick,
 
 392 U.S. 273, 278, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). This is because the immunity attaching to any incriminating statements made to the employer renders unnecessary the employee’s assertion of Fifth Amendment rights.
 
 See Sher,
 
 488 F.3d at 502. Under these circumstances, the employee’s silence on purported Fifth Amendment grounds is unprotected by the Constitution and may in fact provide a basis for termination.
 

 Counsel for the School Board interprets this law as allowing a principal to require a teacher to appear without counsel for an investigatory interview and to then fire any teacher who does not appear for the interview. Counsel’s application of this position to the facts of this case is over-broad. Here, the record does not establish that Ms. Cropsey was instructed to attend an investigatory interview under a threat of adverse employment action. We therefore evaluate only whether Ms. Crop-sey’s decision, at the advice of counsel, not to appear for the requested discussion established a basis for her termination. We conclude that it did not.
 

 The School Board bears the burden of proving by a preponderance of the evidence each element of the charged offense which may warrant dismissal.
 
 Dileo v. Sch. Bd. of Dade County,
 
 569 So.2d 883 (Fla. 3d DCA 1990). The Florida Administrative Code and the School Board’s policies define the various charges leveled against Ms. Cropsey. Florida Administrative Code Rule 6B-4.009(3) defines misconduct in office as a violation of the Code of Ethics and Principles of Ethical Conduct of the Education Profession, which “is so serious as to impair the individual’s effectiveness in the school system.” Rule 6B-4.009(4) defines gross insubordination or willful neglect of duties as a “constant or continuing intentional refusal to obey a direct order, reasonable in nature, and giv
 
 *356
 
 en by and with proper authority.
 
 See Rutan v. Pasco County Sch. Bd.,
 
 435 So.2d 399, 400 (Fla. 2d DCA 1983);
 
 Smith v. Sch. Bd. of Leon County,
 
 405 So.2d 183, 185 (Fla. 1st DCA 1981). Rule 6B-1.001(3) calls for employees “to strive[ ] to achieve and sustain the highest degree of ethical conduct” to maintain “the respect of ... colleagues, of students, of parents, and of other members of the community.” Lastly, Manatee County School Board Policy 6.13(4) provides that employees must cooperate fully with the Office of Professional Standards or other authorities who are conducting any personnel investigation.
 

 In this case, Ms. Cropsey did not receive a formal notification that she was alleged to have committed a first-degree misdemeanor and that she was ordered to appear before a School Board investigator to answer questions under oath. Instead, she received a letter explaining that allegations had been made by an unknown source regarding violation of FCAT procedures by an unknown person at an unknown time. The letter did not suggest that she was a target of any investigation. It explains that “these allegations need to be discussed with you,” apparently in a discussion with Mr. Rio, although the letter did not specify who would be present at the discussion. The letter did not require or compel Ms. Cropsey’s attendance at this discussion; rather, her “presence” was “requested.” Admittedly, the request does sound serious because Ms. Cropsey is told she may bring “representation.”
 

 When one examines this letter from the perspective of a lawyer retained to give advice on short notice, especially one who is told that he cannot be present for the interview, it is difficult to conceive of a lawyer who would tell his client that she had nothing to worry about because she was assured of automatic immunity for anything she told the principal. There can be no dispute that the advice of Mr. Britt in this context in instructing his client not to appear for the discussion was reasonable and appropriate based on the circumstances confronting him and his brief discussion with Mr. Bowen. While his letter may have overstated his position by claiming that Ms. Cropsey was declining to make
 
 “any
 
 ” statement, the School Board took no steps to resolve this matter and seek a statement a day or two later.
 

 The superintendent decided to fire Ms. Cropsey because she followed her attorney’s advice on this one occasion. There is no evidence in this file supporting a finding that it was unreasonable for Ms. Cropsey to follow her attorney’s advice in this context. Under the most generous definition of “gross insubordination,” “willful neglect,” failing to “strive to achieve and sustain the highest degree of ethical conduct,” or even failing to cooperate fully with an investigation, her decision to decline to attend this discussion was not grounds for termination.
 

 III.
 

 Because Ms. Cropsey, under the advice of counsel, reasonably declined the request to appear for an interview with her principal, we conclude that the School Board failed to establish by competent, substantial evidence the violations for which Ms. Cropsey was charged and terminated. We therefore reverse the School Board’s order terminating Ms. Cropsey’s employment and remand for a calculation of back pay for the remaining duration of her 2006-07 contract.
 

 Reversed and remanded.
 

 FULMER and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . This position by the School Board is not shared by everyone and currently remains unresolved. An administrative law judge has ruled that a private attorney can represent a teacher in a similar context, and that issue is pending on appeal in another case in this district.
 
 See Todd Raven v. Manatee County School Board,
 
 No. 2D08-1533.
 

 [2]
 

 . These considerations are unique to the relationship between a public employer and its employee.
 
 See Uniformed Sanitation Men Ass’n v. Comm’r of Sanitation of City of New York,
 
 426 F.2d 619, 626 n. 3 (2d Cir.1970).