921 So.2d 631 (2005)
Mark E. COOK, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-2987.
District Court of Appeal of Florida, Second District.
September 16, 2005.
Rehearing Denied February 1, 2006.
*632 Benedict P. Kuehne and Susan Dmitrovsky of Sale & Kuehne, P.A., Miami, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
CANADY, Judge.
Mark E. Cook appeals his judgment and sentences for eight counts of capital sexual battery. Although we conclude that none of the issues raised by Cook require reversal, we write to address Cook's claim that the trial court improperly admitted certain similar fact evidence of other crimes. Cook argues that the State was collaterally estopped from presenting the similar fact evidence because there was a determination in Cook's favor on the merits in an earlier administrative proceeding concerning the allegations on which the similar fact evidence was based.

*633 I. Background

The crimes of which Cook was convicted in 2003 occurred during the period from 1978 to 1984 and were perpetrated against three students at the elementary school where Cook was the principal. The offenses were severed for three separate trials, with the offenses against a particular victim to be tried together. After Cook's first trial resulted in his conviction on the two counts tried, Cook entered a no contest plea to the remaining charges. Pursuant to a stipulation with the State, Cook reserved the right to withdraw the no contest plea if his convictions for the two counts "[were] reversed and remanded for a new trial."
At Cook's trial, testimony was given by the victim of the offenses which were being tried. In addition, similar fact evidence testimony was given by the two victims of the other charged offenses. Similar fact evidence testimony was also given by C.B., wholike the victims of the charged offenseshad been a student at the school where Cook was principal. C.B.'s testimony is the subject of Cook's claim of collateral estoppel.
In February 1984, C.B. had accused Cook of sexual misconduct with C.B. several years before. In response to C.B.'s accusations against Cook, the Florida Department of Education, Education Practices Commission, filed an administrative complaint seeking disciplinary action against Cook's teaching certificate. Central to the complaint against Cook was C.B.'s accusation that "Cook initiated a homosexual encounter [with C.B.], [which] led to some thirty to forty such encounters." A formal evidentiary hearing was conducted before a hearing officer. At the hearing, testimony was presented by Cook, C.B., and various other witnesses.
In his recommended order, the hearing officer specifically found that "there were no homosexual encounters" between C.B and Cook. The hearing officer based his recommendation that the charges against Cook be dismissed on his conclusion "that the testimony of Cook as corroborated by his friends, colleagues and family, is deemed more credible and trustworthy than that of [C.B.] and his supporting witnesses, especially in light of the number of discrepancies and inconsistencies contained in [C.B.'s] testimony." Citing Smith v. School Board, 405 So.2d 183, 186 (Fla. 1st DCA 1981), the hearing officer acknowledged "the `elevated standard' of proof in teacher disciplinary cases."
The State does not contest that the hearing officer's recommended order was adopted by the Department of Education, Education Practices Commission, resulting in the dismissal on the merits of the administrative complaint against Cook. Nor does the State contest that the allegations of C.B. addressed by the hearing officer in the administrative proceeding related to the same alleged conduct of Cook that was the subject of C.B.'s similar fact evidence testimony in the criminal trial.

II. Analysis

This case presents an issue of first impression in Florida concerning the collateral estoppel effect in criminal proceedings of prior determinations made in formal administrative proceedings. Specifically, we must decide whether the State is collaterally estopped in a criminal proceeding from presenting similar fact evidence when that evidence has been determined in a prior formal administrative proceeding to be lacking in credibility and an administrative decision has as a consequence been rendered in favor of the defendant. For the reasons we now explain, we conclude that collateral estoppel against the State is not applicable in such circumstances.

*634 A. Collateral Estoppel: General Principles

The doctrine of collateral estoppelwhich is also known as issue preclusion and estoppel by judgment"bars relitigation of the same issues between the same parties in connection with a different cause of action." Topps v. State, 865 So.2d 1253, 1255 (Fla.2004). The doctrine thus comes into play in a case when, in an earlier proceeding involving a different cause of action, the "same parties" litigated the "same issues" that are presented once again for decision. Id. The doctrine bars "`the parties from litigating in the second suit issuesthat is to say points and questionscommon to both causes of action and which were actually adjudicated in the prior litigation.'" Stogniew v. McQueen, 656 So.2d 917, 919 (Fla.1995) (quoting Gordon v. Gordon, 59 So.2d 40, 44 (Fla.1952)). The determination must be essential to the prior adjudication in order to be given preclusive effect. State v. Strong, 593 So.2d 1065, 1067 (Fla. 4th DCA 1992). "Collateral estoppel . . ., like its near relative res judicata, serves to limit litigation by determining for all time an issue fully and fairly litigated." Trucking Employees of N. Jersey Welfare Fund, Inc. v. Romano, 450 So.2d 843, 845 (Fla. 1984), superseded by statute on other grounds as stated in Starr Tyme, Inc. v. Cohen, 659 So.2d 1064 (Fla.1995). The doctrine may be applied in "criminal and civil contexts." State v. McBride, 848 So.2d 287, 290 n. 1 (Fla.2003). And it is "applicable to administrative proceedings." Deep Lagoon Boat Club, Ltd. v. Sheridan, 784 So.2d 1140, 1141 n. 4 (Fla. 2d DCA 2001).
In summary:
For the doctrine of collateral estoppel to apply to bar relitigation of an issue, five factors must be present: (1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.
Goodman v. Aldrich & Ramsey Enters., Inc., 804 So.2d 544, 546-47 (Fla. 2d DCA 2002); see also Restatement (Second) of Judgments § 27 (1982) ("Issue PreclusionGeneral Rule[:] When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").[1]
The requirement of Florida law that the prior determination of an issue be based on full and fair litigation is similar to the acknowledgement in Restatement (Second) of Judgments Section 28(3) of an exception to the general rule of issue preclusion when "[a] new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them." See also Restatement (Second) of Judgments: ch. 1, Scope ("[A] judgment in a particular case must be subject to reexamination in the name of substantial justice if the initial engagement of the merits was inadequate.").
In general, Florida has adhered to the requirement of mutuality of parties. *635 "[U]nless both parties are bound by the prior judgment, neither may use it in a subsequent action." Stogniew, 656 So.2d at 919. Notwithstanding the federal decisions in which collateral estoppel has been applied despite the absence of mutuality of parties, see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), and Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), the rule in Florida has beenwith limited exceptions[2]that collateral estoppel only "applies when `the identical issue has been litigated between the same parties or their privies,'" McBride, 848 So.2d at 291 (quoting Gentile v. Bauder, 718 So.2d 781, 783 (Fla.1998)).
A person who was not a named party to an action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party or virtually represented by a party.
For one to be in privity with one who is a party to a lawsuit or for one to have been virtually represented by one who is a party to a lawsuit, one must have an interest in the action such that she will be bound by the final judgment as if she were a party.
Stogniew, 656 So.2d at 920. "The concept of `privity' refers to a cluster of relationships. . . under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party. . . ." Restatement (Second) of Judgments: ch. 1, Scope. "One party may be said to be a privy of another whenever there is a mutual or successive relationship to the same right." Osburn v. Stickel, 187 So.2d 89, 91-92 (Fla. 3d DCA 1966); see also EEOC v. Pemco Aeroplex, Inc., 383 F.3d 1280, 1286 (11th Cir.2004) ("`Privity' is a flexible legal term, comprising several different types of relationships and generally applying when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party."). The existence of a virtual representation relationship is based on "closely aligned" interests of a party and a person who is not a formal party. Stogniew, 656 So.2d at 920 (quoting Aerojet-Gen. Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.1975)); see also Pemco, 383 F.3d at 1287 (setting forth "four factors [used] in determining whether there is virtual representation: whether there was `participation in the first litigation, apparent consent to be bound, apparent tactical maneuvering, [and] close relationships between the parties and nonparties'") (citation omitted).
Differences in the burden of proof or persuasion between the initial proceeding and the subsequent proceeding may also affect whether the doctrine of collateral estoppel will be applied. Restatement (Second) of Judgments Section 28(4) thus recognizes that a determination of an issue will not be given preclusive effect where "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action." The classic example of the application of this exception occurs in the context of an acquittal in a criminal proceeding, which is not sufficient to protect the defendant from liability in a subsequent civil action by the government related to the same misconduct. See One Lot Emerald Cut Stones v. United States, 409 *636 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972); Helvering v. Mitchell, 303 U.S. 391, 397, 58 S.Ct. 630, 82 L.Ed. 917 (1938); State v. Dubose, 152 Fla. 304, 11 So.2d 477 (1943).
Florida also recognizes a "manifest injustice exception" to the doctrine of collateral estoppel. McBride, 848 So.2d at 291. This exception comes into play when application of the doctrine "would defeat the ends of justice." Id.; cf. Universal Const. Co. v. City of Fort Lauderdale, 68 So.2d 366, 369 (Fla.1953) (discussing "the salutary principle that the doctrine of res judicata should not be so rigidly applied as to defeat the ends of justice"). The manifest injustice exception recognized in Florida law parallels the exception in Restatement (Second) of Judgments Section 28(5)(a) for circumstances where "[t]here is a clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest." See State v. Freund, 626 So.2d 1043, 1046 (Fla. 4th DCA 1993) (citing Restatement (Second) of Judgments § 28(5)(a) in support of holding that "denial of a petition for dependency does not preclude a criminal charge based on the same misconduct involved in the dependency proceeding").

B. Collateral Estoppel in Criminal Cases

Although the doctrine of collateral estoppel has been applied in criminal cases, application of the doctrine in the criminal context raises special concerns. Ashe v. Swenson, 397 U.S. 436, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and State v. Perkins, 349 So.2d 161 (Fla.1977), recognized the proper operation of the doctrine in the criminal context, while Standefer v. United States, 447 U.S. 10, 24, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), acknowledged limitations of the application of the doctrine in criminal cases. These three cases illustrate some of the complexities involved in determining whether a prior judgment should be given preclusive effect in a criminal proceeding.
In Ashe, 397 U.S. at 445, 90 S.Ct. 1189, the Supreme Court held that the doctrine of collateral estoppel is "embodied in the Fifth Amendment guarantee against double jeopardy." The Ashe Court applied the doctrine where a defendant had been acquitted of an offense against one victim of a robbery and was subsequently prosecuted for an offense against another victim of the same robbery. The Court noted that "[t]he single rationally conceivable issue in dispute before the jury [in the first trial] was whether the [defendant] had been one of the robbers." Id. The Court stated that the question "is simply whether, after a jury determined by its verdict that the [defendant] was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again." Id. at 446, 90 S.Ct. 1189. The Court concluded that the State was collaterally estopped from doing so:
Once a jury had determined upon conflicting testimony that there was at least a reasonable doubt that the [defendant] was one of the robbers, the State could not present the same or different identification evidence in a second prosecution for the robbery of [the same victim] in the hope that a different jury might find that evidence more convincing. The situation is constitutionally no different here, even though the second trial related to another victim of the same robbery.
Id. The defendant's acquittal in one criminal trial with respect to the crime against one victim accordingly had preclusive effect in a subsequent criminal proceeding with respect to the crime against another victim.
*637 In Perkins, the court considered whether collateral estoppel barred the introduction in a criminal trial of similar acts evidence relating to a crime of which the defendant had previously been acquitted. The court concluded that "it is fundamentally unfair to a defendant to admit evidence of acquitted crimes":
It is inconsistent with the notions of fair trial for the state to force a defendant to resurrect a prior defense against a crime for which he is not on trial. Therefore, we hold that evidence of crimes for which a defendant has been acquitted is not admissible in a subsequent trial.
349 So.2d at 163-64.[3] Florida law thus recognizes thatat least in some circumstancesthe determination of an issue made in one criminal proceeding will preclude the relitigation of that issue in a subsequent criminal proceeding.
In Standefer, 447 U.S. at 24, 100 S.Ct. 1999, the Court recognized that "the important federal interest in the enforcement of the criminal law" may "outweigh the [judicial] economy concerns that undergird the estoppel doctrine." Based on that interest in the enforcement of the criminal law, the Court held that the acquittal of the named principal did not preclude the subsequent prosecution of the defendant for aiding and abetting. In doing so, the court refused to extend the application of the federal doctrine of nonmutual estoppel to the context of criminal prosecutions.
"[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction."
Id. at 25, 100 S.Ct. 1999 (quoting United States v. Standefer, 610 F.2d 1076, 1093 (3d Cir.1979)).[4]

C. Collateral Estoppel in Criminal Proceedings Based on Prior Administrative Determinations

We now examine case law addressing the question of whether determinations made in administrative proceedings have preclusive effect in subsequent criminal proceedings. Specifically, we examine cases addressing this question in five contexts: probation and parole revocation proceedings; professional disciplinary proceedings; public employee disciplinary proceedings; drivers' license revocation *638 proceedings; and welfare fraud proceedings. From our survey of the law we conclude that the weight of authority points to the conclusion that administrative determinations should not generally be the basis for application of collateral estoppel against the government in criminal proceedings.

1. Probation and Parole Revocation Proceedings

The Florida Supreme Court has addressed the effect that determinations made in probation revocation proceedingsproceedings which are "administrative in nature," Croteau v. State, 334 So.2d 577, 580 (Fla.1976)  have in subsequent criminal proceedings. In Green v. State, 463 So.2d 1139 (Fla.1985), the court considered a certified question concerning whether the State is collaterally estopped from trying a defendant for a criminal offense when a determination was previously made in a probation revocation proceeding that the evidence was insufficient to prove the criminal offense. The court answered the certified question in the negative. In deciding that preclusive effect should not be given to the determination made in the probation revocation proceeding, the court reasoned that "no jeopardy attached for the new criminal offenses during the revocation proceeding." Id. at 1140. The court also noted that "in an analogous situation, a prosecution may be instituted even though there is a finding of no probable cause at a preliminary hearing." Id. (citing State v. Hernandez, 217 So.2d 109 (Fla.1968)). Although the court in Green did not discuss the collateral estoppel issue in depth, its holding that collateral estoppel did not arise from the determination made in the probation revocation proceeding is instructive concerning the impact of administrative determinations in subsequent criminal proceedings.
Other courts have also concluded that determinations made in probation revocation proceedings should not be given preclusive effect in subsequent criminal proceedings. In Lucido v. Superior Court, 51 Cal.3d 335, 272 Cal.Rptr. 767, 795 P.2d 1223 (1990), the California Supreme Court held that collateral estoppel did not bar the State from prosecuting a defendant for a crime after a determination in a probation revocation proceeding that the State failed to prove a violation of probation based on the same crime. Accord State v. Gautier, 871 A.2d 347 (R.I.2005); State v. Brunet, 174 Vt. 135, 806 A.2d 1007 (2002); Krochta v. Commonwealth, 429 Mass. 711, 711 N.E.2d 142 (1999); State v. McDowell, 242 Conn. 648, 699 A.2d 987 (1997).
Observing that "[a]lthough traditional threshold requirements for applying collateral estoppel may be satisfied in this case," 272 Cal.Rptr. 767, 795 P.2d at 1224, the Lucido court went on to hold that "[a]pplying collateral estoppel would unduly expand the designated function of the revocation hearing and undermine the public interest in determining criminal guilt and innocence at criminal trials," id. at 1233. "Probation revocation hearings and criminal trials serve different public interests, and different concerns may shape the People's pursuit of revocation and conviction." Id. at 1229-30. The court concluded that "[t]hese differences justify permitting a criminal prosecution to follow a revocation proceeding that results in a judgment adverse to the People." Id. at 1230. "Preemption of trial of a new charge by a revocation decision designed to perform a wholly independent social and legal task would undermine the function of the criminal trial process as the intended forum for ultimate determinations as to guilt or innocence of newly alleged crimes." Id. at 1230-31; cf. Restatement (Second) of Judgments § 83(4) ("An adjudicative determination of an issue by an administrative *639 tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that: . . . (b) the tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.").
In State v. Dupard, 93 Wash.2d 268, 609 P.2d 961 (1980), the Supreme Court of Washington reached a similar conclusion regarding the impact of a determination made in a parole revocation hearing on a subsequent criminal prosecution. The court held that the State was not "collaterally estopped in a criminal prosecution from litigating matters previously determined in [the defendant's] favor at a parole revocation hearing." Id. at 962. The court justified its decision on policy grounds: "Practical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel proceedings of the Board of Prison Terms and Paroles." Id. at 965. The court stated that the "basic factual question . . . whether the parolee in fact committed a new crime . . . is more appropriately addressed to the criminal justice system." Id.

2. Professional Disciplinary Proceedings

In circumstances closely analogous to the present case, the court in State v. Fritz, 204 Conn. 156, 527 A.2d 1157 (1987), overruled on other grounds by State v. Crawford, 257 Conn. 769, 778 A.2d 947 (2001), rejected the defendant physician's claim that the State was collaterally estopped from prosecuting him for illegally prescribing a narcotic substance when a determination had previously been made in administrative professional disciplinary proceedings that the department of consumer protection had failed to prove that the defendant had illegally prescribed a narcotic substance. The State conceded that "the issues raised before the administrative agency were substantially the same as those raised in the criminal prosecution of the defendant" but contended that there was "no privity between the state's attorney's office within the division of criminal justice and the department of consumer protection." Id. at 1165.
While acknowledging that "the concept of privity is difficult to define precisely," id., the court stated that "`a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity,'" id. at 1166 (quoting BTC Leasing, Inc. v. Martin, 685 S.W.2d 191, 198 (Ky.App.1984)). The privity requirement thus "ensure[s] that the interests of the party against whom collateral estoppel is being asserted have been adequately represented because of his purported privity with a party at the initial proceeding." Id. Viewing the issue in the light of this understanding of the nature of privity, the court stated that it was compelled to conclude "that the department of consumer protection is not in privity with the division of criminal justice." Id.
The court also focused on the dissimilar purpose of the administrative proceedings and the criminal proceedings:
The purpose of the administrative proceedings. . . is to police licensing requirements within the state, while the state's attorney's interest in the criminal proceeding is in having guilt or innocence determined under the applicable criminal law and in seeing that proper punishment is meted out in the event that the criminal law has been violated. The state's attorney represents the broader public interest in the effective administration of criminal justice.
Id. at 1167 (quotation mark omitted). The court thus held that "the state's interest in *640 having guilt or innocence determined is not adequately served in an administrative proceeding because . . . the state's attorney has no control over the timing, substance or litigation of charges lodged against the defendant by the department of consumer services." Id.

3. Public Employee Disciplinary Proceedings

Determinations made in administrative employee disciplinary proceedings have similarly been held to have no preclusive effect in subsequent criminal proceedings. The decision in United States v. Payne, 2 F.3d 706 (6th Cir.1993), is illustrative. There the court held that an administrative determination that the Postal Service had failed to prove charges of misconduct against a postal worker did not estop the United States from prosecuting the postal worker for crimes based on substantially similar allegations. Accord People v. Morgan, 111 A.D.2d 771, 490 N.Y.S.2d 30 (1985).
The Payne court concluded that collateral estoppel was not applicable in such circumstances "`because of the strong policy in favor of the enforcement of the criminal law.'" 2 F.3d at 709 (quoting United States v. Alexander, 743 F.2d 472, 477 (7th Cir. 1984)); see Alexander, 743 F.2d at 476 (noting that "in no case has a federal court presiding over a criminal trial granted preclusive effect to a prior administrative ruling contrary to the Government's position in the criminal case" and that "[t]o allow such preclusion would present a debilitating impediment to the enforcement of the federal criminal law.").
In State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995), the Supreme Court of West Virginia similarly held that an administrative determination that a state hospital employee had not committed assault on a patient would not be given preclusive effect in the subsequent criminal prosecution of the employee. The court concluded that collateral estoppel was inapplicable because the board making the administrative determination "has no authority to resolve a criminal matter, and the procedures employed and protections afforded at each proceeding are significantly different." Id. at 123. The court also concluded that "there is no privity between the prosecuting attorney's office and the Department of Health and Human Resources [the defendant's employee], which was represented by the Attorney General's Office in the grievance proceedings." Id. at 124.
In addressing the privity issue, the court recognized that the State was involved in the administrative proceeding through a state agency and in the criminal proceeding through the prosecuting attorney. The court held, however, that the agency involved in the administrative proceeding was "not in privity with the prosecuting attorney's office." Id. Relying on Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263 (1940), the court focused on the distinction between the powers and duties of the prosecuting attorney and the authority of the agency involved in the administrative proceeding, as well as the different purposes of the administrative proceeding and the criminal proceeding. In Sunshine Anthracite Coal Co., 310 U.S. at 402-03, 60 S.Ct. 907, the Supreme Court recognized the existence of "privity between officers of the same government," but the Court also acknowledged that "[t]he crucial point is whether or not in the earlier litigation the representative of the [government] had authority to represent its interests in a final adjudication of the issue in controversy." The Miller court pointed out that the agency has the authority to discipline employees, while the "prosecuting attorney. . . exercises powers and duties with respect *641 to the investigation and prosecution of criminal matters." 459 S.E.2d at 124. The Miller court went on to say:
The purpose of an administrative proceeding. . . is to determine whether a grievant, as a public employee, engaged in an activity which warrants an adverse employment action, while the prosecuting attorney's interest is in having guilt or innocence of a defendant determined under the applicable criminal law and in seeing that proper punishment is meted out in the event that the criminal law has been violated. The prosecuting attorney represents the broader public interests in the effective administration of justice.
Id. at 124-25.
In light of these circumstances, the court determined "that the State's interest in having guilt or innocence determined is not adequately served in an administrative proceeding because the prosecuting attorney has no control over the timing, substance, or litigation of charges against the defendant at the grievance level." Id. at 125[5]; see also State v. Alvey, 67 Haw. 49, 678 P.2d 5 (1984) (holding that determination in favor of defendant in prison disciplinary proceeding should not be given preclusive effect in subsequent criminal prosecution).

4. Driver's License Revocation Proceedings

The question of whether an administrative determination should be given preclusive effect in subsequent criminal proceedings has also arisen in the context of administrative driver's license revocation proceedings. For example, in State v. Williams, 76 Ohio St.3d 290, 667 N.E.2d 932, 937 (1996), the court held that "the doctrine of issue preclusion does not preclude the relitigation in a criminal proceeding of an issue that was previously determined at an administrative-license-suspension hearing." Accord Reynolds v. State, 4 S.W.3d 13 (Tex.Cr.App.1999); State v. Bacote, 331 S.C. 328, 503 S.E.2d 161 (1998); State v. Bishop, 113 N.M. 732, 832 P.2d 793 (1992); State v. DeWhitt, 82 Or.App. 55, 727 P.2d 151 (1986); People v. Lalka, 113 Misc.2d 474, 449 N.Y.S.2d 579 (1982).
The Williams court rejected the State's argument that the necessary privity was lacking. "The state acts through its various agencies and entities, and the Bureau of Motor Vehicles is an agency of the state." 667 N.E.2d at 936. The court thus concluded that the "state of Ohio is the real party in interest in both proceedings and the requirement of privity as an element of issue preclusion is satisfied." Id. Citing Restatement (Second) of Judgments Section 28(3) and (5), the court held that the doctrine of issue preclusion was inapplicable because the procedures in the license revocation proceedings were "substantially less stringent than the procedures used in the criminal proceedings," id., and because of the "adverse impact on public safety" that would result from applying issue preclusion in this context, id. at 937.
The court expressed its concern that granting preclusive effect to such administrative determinations would in effect force the State to treat the administrative proceedings "as an initial and essential part of the criminal trial" on the related criminal charges and would thus undermine the legislative purpose of providing "a swift administrative review of a driver's license suspension." Id.; see Bacote, 503 S.E.2d at 164 ("[I]f every license revocation hearing carries with it potential collateral estoppel impact on a subsequent criminal *642 action, the State may feel compelled to intervene in every administrative action to effectively protect its interest in some future criminal proceeding."); see also Alexander, 743 F.2d at 477 ("[C]ollateral estoppel in [the administrative-to-criminal] context would affect seriously the executive branch decisions to enforce regulatory schemes. If an administrative decision against the Government precluded subsequent prosecutions, the Government might hesitate to bring enforcement proceedings at all.").

5. Welfare Fraud Proceedings

The leading case holding that an administrative determination has preclusive effect in a subsequent criminal proceeding is People v. Sims, 32 Cal.3d 468, 186 Cal. Rptr. 77, 651 P.2d 321 (1982). In Sims, the court held that an administrative determination that the defendant had not engaged in welfare fraud barred the Stateunder the doctrine of collateral estoppelfrom prosecuting the defendant for a criminal offense involving the same conduct. Accord People v. Watt, 115 Mich. App. 172, 320 N.W.2d 333 (1982).
In addressing the privity issue, the Sims court pointed to the "close association" between the county (the governmental entity involved in the administrative proceeding) and the district attorney's office: they "operate jointly in investigating and controlling welfare fraud." 186 Cal.Rptr. 77, 651 P.2d at 333. "In view of this close association between the County and the district attorney in controlling welfare fraud, and the fact that both entities are county agencies representing the State," the court held that "the County and the district attorney were in privity with each other." Id. The court concluded that various policy considerations, including the existence of "the unique statutory scheme set up by the Legislature establish[ing] a policy in favor of resolving [welfare] fraud cases outside the criminal justice system," militated in favor of giving preclusive effect to the administrative determination. Id. at 334.
In Sims, 186 Cal.Rptr. 77, 651 P.2d at 330, the court recognized that it had "not before given an administrative agency's determination binding effect on a subsequent criminal proceeding." The holding in Sims accordingly was framed narrowly. That holding does not support the conclusion that administrative determinations exonerating a defendant of misconduct will ordinarily be given preclusive effect in subsequent criminal proceedings involving the same misconduct.[6]
In State v. Williams, 132 Wash.2d 248, 937 P.2d 1052 (1997), the Supreme Court of Washington held that the doctrine of collateral estoppel did not preclude a criminal prosecution for welfare fraud where a prior administrative proceeding had resulted in a determination in favor of the defendant. The court rejected the State's claim that the mutuality-of-parties requirement was not satisfied: "Since the prosecutor's office and [the administrative agency] both represent the State, they are in privity." Id. at 1057. The court instead based its holding on policy considerations related to the distinct purpose of the administrative and criminal proceedings and on its concern that giving preclusive effect to such administrative determination would have an undesirable effect on the conduct of administrative proceedings.

D. Application of the Law to the Present Case

Cook relies on the rule articulated by the Florida Supreme Court in Perkins in support of his claim that the State was *643 collaterally estopped to present the similar acts testimony of C.B. We conclude, however, that Perkins is inapposite to the instant case. For purposes of the doctrine of collateral estoppel, the administrative determination exonerating Cook is not equivalent to the Perkins defendant's acquittal in the first criminal trial.
The more pertinent analogy is to the determination in the probation revocation proceeding dealt with in Green. Although Green does not analyze the elements on which collateral estoppel must be based, it nonetheless provides a compelling analogy to the instant case. There is no reason that a determination in an administrative disciplinary proceeding that a defendant is not guilty of particular misconduct should preclude the State in a subsequent criminal proceeding from introducing similar fact evidence based on the same misconduct if the State is not precluded from prosecuting a defendant for a crime that was determined in a probation revocation proceeding to have not occurred.
We recognize that the pertinent factual issue in the criminal trial was identical to the pertinent factual issue in the administrative proceeding, the issue was actually litigated in the administrative proceeding, and the issue was essential to the adjudication in that proceeding. We also recognize that the burden of proof placed on the State in the two proceedings was the same. The State was required to establish the basis for disciplinary action in the administrative proceeding under an "elevated standard of proof," Smith, 405 So.2d at 186, which is equivalent to the clear and convincing evidence standard, see Ferris v. Turlington, 510 So.2d 292 (Fla.1987). The State was also required to establish the basis for C.B.'s similar fact testimony by clear and convincing proof. See Bryant v. State, 787 So.2d 904, 905 (Fla. 2d DCA 2001).[7]
These circumstances are not, however, adequate to justify application of collateral estoppel. Two of the prerequisites for giving preclusive effect to a prior judgment are lacking here. We thus base our holding on two interrelated grounds: (1) the lack of mutuality of parties in the administrative proceeding and the subsequent criminal proceeding, and (2) the absence of a full and fair adjudication due to the dissimilar nature of the administrative proceeding and the criminal trial. These two factors are sufficient to resolve the collateral estoppel issue in the instant case.[8]

1. Lack of Mutuality

In determining whether there was the requisite mutuality of parties, we must consider not only the named parties in the respective proceedings but also any privity relationship or virtual representation. Cook was, of course, a party to both proceedings. The question is whether the Florida Department of Education, Education Practices Commission, has a sufficient relationship with the party opposite Cook in the criminal case, the State of Florida. At one level, there is an undeniable connection between the State of Florida and the Education Practices Commission: the latter is an agency of the former. But the Education Practices Commission was established as an agency of the State for the particular purpose of disciplining educators. See § 231.28, Fla. Stat. (1983) (setting forth authority of Education Practices *644 Commission).[9] That purpose is separate and distinct from the prosecution of crimes.
The State has established the offices of the state attorneys for the purpose of prosecuting crimes. Article V, Section 17 of the Florida Constitution specifically provides that the state attorney of each circuit "shall be the prosecuting officer of all trial courts in that circuit." See Valdes v. State, 728 So.2d 736, 739 (Fla.1999) (stating that "state attorneys fulfill a unique role" and describing state attorney's "power as the prosecuting authority to determine whom and how to prosecute"). With respect to the prosecution of crimes, the State acts exclusively through the offices of the state attorneys. No other officers or agencies of the State are vested with that responsibility or power.[10]
Although the State was a participant in the administrative and criminal proceedings, it participated in the respective proceedings in different capacities. This circumstance is analogous to the circumstance addressed in Restatement (Second) of Judgments Section 36(2): "A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." See Holt v. Brown's Repair Serv., Inc., 780 So.2d 180, 182 (Fla. 2d DCA 2001) (setting forth "identity of the quality or capacity of the persons for or against whom the claim is made" as one of the "four identities" which are necessary for application of the doctrine of res judicata).
In considering whether one agency or official of a government should be bound by determinations made in an action to which another agency or official of the same government was party, the relationship between the responsibilities of the two is a salient factor.
If the second action involves an agency or official whose functions and responsibilities are so distinct from those of the agency or official in the first action that applying preclusion would interfere with the proper allocation of authority between them, the earlier judgment should not be given preclusive effect in the second action.
Restatement (Second) of Judgments § 36(2), cmt. f. In the instant case, the "functions and responsibilities" of the Educational Practices Commission "are so distinct from those of" the state attorney "that applying preclusion would interfere with the proper allocation of authority between" the commission and the state attorney. Id. Allowing the course of proceedings in a criminal case to be determined by the litigation failure of a state agency with no constitutional authority with respect to criminal proceedings would be in derogation of the constitutional authority of the state attorney.
We thus adopt the view of the privity issue expressed in Fritz and Miller and hold that the requirement of mutuality of parties was not satisfied.

2. Dissimilar Nature of Proceedings

As we have discussed, whether there has been a full and fair adjudication of an issue sufficient to justify application of collateral estoppel may turn on differences in the nature of the respective proceedings. What may have been a "full and fair opportunity to litigate," Goodman, 804 So.2d at 546, when considered in the context of *645 the first proceeding, may not be sufficient when viewed in the context of the second proceeding. See Restatement (Second) of Judgments § 28(3). The different purposes served by the administrative proceeding and the criminal proceeding in the instant case lead us to conclude that preclusive effect should not be given to the administrative determination. Our conclusion on this point is supported by the holding in Green, as well as the reasoning of the decisions in Lucido, Dupard, Fritz, and Miller.
This point is, of course, interrelated with the privity issue. The dissimilar responsibilities and objectives of the Education Practices Commission and the state attorney, as well as the dissimilar jurisdictions of the hearing officer and the criminal court, point to the conclusion thatfor purposes of the criminal proceedingthe issue of whether Cook engaged in the criminal conduct of which he was accused by C.B. was not fully and fairly litigated in the administrative proceeding. Given the different nature of the administrative and criminal proceedings, "the initial engagement of the merits was inadequate" and the administrative determination "must be subject to reexamination in the name of substantial justice." Restatement (Second) of Judgments: ch. 1, Scope.

III. Conclusion

We thus conclude that the State was not collaterally estopped from introducing C.B.'s testimony. Since neither this issue nor any of the other issues raised by Cook have merit, we affirm the judgment and sentences.
Affirmed.
FULMER, C.J., and SALCINES, J., Concur.
NOTES
[1] The Restatement only addresses "the preclusive effects of judgments in civil actions." Restatement (Second) of Judgments: ch. 1, Scope. It does not deal directly with the effects of prior adjudications on subsequent criminal proceedings. Id.
[2] See, e.g., § 772.14, Fla. Stat. (2004); Blumberg v. USAA Cas. Ins. Co., 790 So.2d 1061 (Fla.2001); Zeidwig v. Ward, 548 So.2d 209 (Fla.1989).
[3] The Supreme Court has reached a different conclusion. See Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) (holding that the introduction of similar acts evidence relating to a crime of which the defendant had previously been acquitted did not violate double jeopardy or due process). Florida hason state constitutional groundsadhered to the view advanced in Perkins. See Burr v. State, 576 So.2d 278, 280 (Fla.1991) ("Perkins rests entirely on Florida Law. Art. I, § 9, Fla. Const. [due process/double jeopardy].")
[4] In Yates v. United States, 354 U.S. 298, 335, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Court observed in dicta that "the doctrine of collateral estoppel is not made inapplicable by the fact that [its application is sought in] a criminal case, whereas the prior proceedings were civil in character." Standefer, 447 U.S. at 24-25, 100 S.Ct. 1999, however, places a new emphasis on considering the important interest in the enforcement of the criminal law when deciding if collateral estoppel should be applied in a criminal proceeding.
[5] Without citing Fritz, Miller closely tracks the analysis employed in Fritz.
[6] The rule announced in Sims was soon legislatively abrogated. See People v. Preston, 43 Cal.App.4th 450, 50 Cal.Rptr.2d 778 (1996).
[7] Under the Federal Rules of Evidence, a lower standard is applicable to the admission of similar acts evidence. See Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).
[8] In view of our holding that two of the prerequisites for application of the doctrine of issue preclusion were not satisfied, we need not decide whether the manifest injustice exception would be applicable. We note, however, that the factors justifying that exception appear to be present in the instant case.
[9] The authority of the Education Practices Commission is currently set forth in section 1012.795, Florida Statutes (2004).
[10] In limited circumstances crimes may be prosecuted by the statewide prosecutor. See art. IV, § 4(b), Fla. Const.; § 16.56, Fla. Stat. (2004).