[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11956

_____

D.C. Docket No. 6:16-cv-02156-CEM-GJK

SUSAN MARTINEZ,

Plaintiff - Appellant,

versus

MARKET TRADERS INSTITUTE, INC.,
MARKET TRADERS INSTITUTE FINANCIAL, INC.,
NEXT STEP FINANCIAL HOLDINGS, INC.,
EFOREX, INC.,
now known as Easy Eforex, Inc.,
FX CURRENCY TRADERS, INC., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(December 6, 2018)

Before TJOFLAT, MARCUS, and NEWSOM, Circuit Judges.

PER CURIAM:

This case involves RICO claims that grow out of an ugly, protracted, and hotly contested divorce action—in which (oddly, but importantly as it turns out) numerous family businesses were named parties.  Susan Martinez and her former husband, Jared Martinez, commenced their divorce proceeding in the Florida state courts in 2009 and eventually finalized their divorce in Flagler County, Florida Circuit Court in March 2018.  Separately, Susan filed this RICO action in federal court against a host of individuals and business entities asserting, as relevant here, that one of the family businesses—Market Traders Institute, Inc. ("MTI")— engaged with others in a conspiracy to commit mail fraud, wire fraud, and financial-institution fraud, which in turn harmed her 50% ownership stake in MTI. The various family-member and family-business defendants responded, in part, by contending that Susan had surrendered her ownership interest in MTI, effective May 2010—years before filing her RICO action—as part of an earlier phase of the divorce proceeding, and that she therefore lacked the requisite standing to pursue her RICO claims.  The district court agreed and dismissed Susan's suit.

Because the stock-ownership issue has since—indeed, quite recently—been finally adjudicated in the state-court divorce proceeding, we hold that Susan is collaterally estopped from relitigating before us the issue whether she retained an

2

ownership interest in MTI.  And because we defer to the state court's no-ownership determination, we conclude that Susan does not have the necessary standing to pursue her RICO claim in this court and therefore affirm the district court's order dismissing her case.

## I

MTI was created by Susan Martinez and her then-husband Jared Martinez in 2002: each owned a 50% interest in the company.  Seven years later, Susan filed for divorce in Seminole County, Florida Circuit Court.  On May 4, 2010, they entered into a Partial Settlement Agreement ("PSA") in which Susan agreed to assign to Jared all of her "stock, ownership, and rights in MTI."  The PSA required Jared, in turn, to assign the stock, ownership, and associated rights to the couple's sons.  On May 7, the state court presiding over the divorce proceeding entered a Stipulated Order Approving the Partial Settlement Agreement.  The Stipulated Order provided, in part, that "all of the stock in MTI assigned from Susan Martinez to Jared Martinez shall be held in escrow by the Special Master until the payment for that stock has been accomplished in full."

In February 2011, however, before the parties fully performed the stock assignment, Susan voluntarily dismissed the Seminole County proceeding.  She re-filed shortly thereafter in Flagler County, Florida Circuit Court.

The Flagler County proceeding (finally) came to a close in March 2018 after a three-week bench trial. Significantly here, the resulting Bifurcated Final Judgment of Dissolution of Marriage incorporated an earlier August 2017 Order Granting Motion to Enforce Partial Settlement Agreement and Martial Settlement Order. That Order stated that the May 2010 PSA, pursuant to which the share transfer was effectuated, was "entered into freely, voluntarily and knowingly" by the parties, and that it had never been vacated or set aside. The August 2017 Order further held, definitively, that "Susan validly transferred her shares in MTI to Jared effective as of May 7, 2010."

## II

As already explained, the federal district court dismissed Susan's amended RICO complaint for lack of standing: she now appeals the district court's decision that she lacked both Article III and statutory standing. We do not assess her claim in a vacuum, however; rather, we take into consideration her divorce proceeding in state court and the effect that determinations made there might have on issues pending before us.

Issue preclusion—or "collateral estoppel"—precludes a litigant from re-litigating an issue that was actually litigated in an earlier action to a final judgment

4

between the same parties, provided that the issue in both proceedings is in fact the same. *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1302–03 (2015) (explaining the elements of issue preclusion); *see also Pearce v. Sandler*, 219 So. 3d 961, 965 (Fla. 3d Dist. Ct. App. 2017) ("[C]ollateral estoppel, also known as issue preclusion, applies where: (1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding.") (citation omitted). Because Susan's divorce proceeding and the resulting judgment occurred in the Florida courts, we apply Florida law to determine whether to give preclusive effect to issues embodied in the state court's judgment. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011).

Here, it is clear that both the state-court divorce proceeding and Susan's federal RICO action involve the same issue, namely, Susan's alleged ownership of MTI stock—the former to resolve a dispute about an underlying marital asset, and the latter to address Susan's continuing standing to sue. It is also clear that the issue of Susan's MTI stock ownership was actually litigated in the divorce proceeding. Before entering the August 2017 Order, the Flagler County Circuit Court held an eight-hour evidentiary hearing to determine whether Susan was

5

bound by the May 2010 PSA.  Finally, it is clear that a final judgment was issued in the state-court proceeding in March 2018, and that the judgment explicitly incorporated the August 2017 Order, which (as already noted) held in no uncertain terms that "Susan validly transferred her shares in MTI to Jared effective as of May 7, 2010."

The sole remaining question, then, is whether the parties are the same in both suits.  Under Florida law, collateral estoppel requires "mutuality"—or sameness—of parties.  *Amador v. Fla. Bd. of Regents ex rel. Fla. Int'l Univ.*, 830 So. 2d 120, 122 n.1 (Fla. 3d Dist. Ct. App. 2002); *see also Stogniew v. McQueen*, 656 So. 2d 917, 919–20 (Fla. 1995).  With respect to most of the parties at issue here, even the strictest mutuality requirement is satisfied.  Each named defendant—including the family-business entities—was a party to the Flagler County divorce proceeding, save two.  Only Joshua Martinez (who was dismissed from the federal RICO suit on Susan's motion) and Lisa Estrada were named in the federal RICO suit but were not parties to the state-court divorce proceeding.[1]

---

[1] The RICO suit names, along with Joshua Martinez and Estrada, the following defendants: Isaac Martinez, Jacob Martinez, Market Traders Institute, Inc., Market Traders Institute Financial, Inc., Next Step Financial Holdings, Inc., EFOREX, Inc., FX Currency Traders, Inc., I Trade FX, LLC, Institutional Liquidity, LLC, and Navitas Investments, LLC.  Each of these defendants was also a named party in the divorce proceeding in Flagler County.

6

Florida courts, like most others, recognize exceptions to the requirement that parties be identical. *5F, LLC v. Dresing*, 142 So. 3d 936, 947 (Fla. 2d Dist. Ct. App. 2014). One of those exceptions, applicable here, is "privity." In Florida, "[a] person who was not a named party to [a prior] action will nonetheless be subject to collateral estoppel arising from that action if that person was in privity with a party" in that action. *Cook v. State*, 921 So. 2d 631, 635 (Fla. 2d Dist. Ct. App. 2005). Privity is a "flexible legal term" that applies "when a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Id.* (quoting *E.E.O.C. v. Pemco Aeroplex, Inc.*, 383 F.3d 1280, 1286 (11th Cir. 2004)).

Estrada and Joshua are both covered by the privity exception to the mutuality requirement. Estrada was the Chief Compliance Officer of I Trade FX, LLC, a named defendant in both proceedings. Likewise, Joshua acted as the president, director, secretary, and treasurer of Next Step Financial Holdings, Inc., also named in both proceedings. There is no reason to think—and none has been supplied to us—that their interests would have diverged in any way from those of their named-party companies. Moreover, and in any event, Susan's federal RICO suit makes no allegations against Estrada, and (as already noted) Susan voluntarily dismissed Joshua from her RICO action.

7

Because all of the named defendants in Susan's RICO action were either named parties in the state-court divorce proceeding or in privity with parties named in that proceeding, collateral estoppel bars Susan from relitigating in federal court the issue of her MTI ownership, which was fully and finally adjudicated in state court. And once we defer, as we conclude we must, to the state courts' determination that Susan relinquished her MTI stock in 2010, we are constrained to hold, as the district court found, that she has no standing to pursue her RICO claims.[2]

**AFFIRMED.**

---

[2] There is one loose end: There is no basis for Susan's assertion that the RICO defendants waived their preclusion arguments. Susan filed her federal RICO action in 2015; it was dismissed by the district court in 2017. It was not until the state court issued a final judgment in the divorce proceeding in March 2018 that collateral estoppel became a viable argument. The RICO defendants raised the collateral-estoppel issue following the state court's final judgment. Regardless, courts may raise the issue of collateral estoppel *sua sponte*, particularly in a case such as this one where collateral estoppel is wrapped up with the issue of standing. *See, e.g.*, *Akanthos Capital Mgmt., LLC v. Atlanticus Holdings Corp.*, 734 F.3d 1269, 1272 (11th Cir. 2013) ("Even if the [appellees] had not raised their defense of *res judicata*, we would *sua sponte* raise the issue. No prejudice results from our dismissal of this appeal because [appellants] ha[ve] already fully and fairly litigated the identical complaint.").