# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-2206
Lower Tribunal No. 2015-CA-4885-0

_____

YOUNG BOCK SHIM and CELLUMED CO., LTD., f/k/a KOREA BONE BANK CO., LTD.,

Appellants,

v.

BUECHEL-PAPPAS TRUST,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
John E. Jordan, Judge.

September 6, 2024

FELTEL, G.L., Associate Judge.

Young Bock Shim ("Shim") and Cellumed Co., Ltd., f/k/a Korea Bone Bank Co., Ltd. ("Cellumed") appeal the entry of two orders granting partial summary judgment and awarding damages to the Buechel-Pappas Trust ("BP Trust") relating to alleged breaches of the parties' product license agreement (the "License Agreement"). Because the record for each partial summary judgment reveals the existence of a genuine issue of material fact regarding whether the products sold were

subject to the License Agreement and, therefore, whether BP Trust is entitled to the damages awarded, we reverse.[1]

Background

This appeal arises out of the second of two related lawsuits, but its determination requires that we examine the first (the "2013 Suit") because it is the source of factual determinations relied upon by the trial court in granting the partial summary judgments we are now asked to reverse.

Fifteen years ago, Cellumed purchased a medical device manufacturer named Endotec from BP Trust. In connection with the purchase, the parties entered into the License Agreement which called for Cellumed to produce and sell Endotec's devices and to pay a percentage of its sales revenue on those products to BP Trust (the "Royalty Fees").

One of the products subject to the License Agreement was a prosthetic knee device used in knee replacements called the BP Mobile Knee. After entering the License Agreement, Cellumed learned that regulators banned the BP Mobile Knee from being sold in the United States. To avoid market stigma of the unapproved prosthetic device, Cellumed simply changed the name of the "BP Mobile Knee" to the "LF Knee" and proceeded to sell the renamed product outside the United States

---

[1] Because the existence of a genuine issue of material fact is determinative of this appeal, we do not reach or discuss the other points raised by Cellumed.

2

only. Believing BP Trust had misrepresented the U.S. regulatory approval status of their prosthetic knee device, Cellumed stopped paying the Royalty Fees to BP Trust and the first lawsuit followed.

In the 2013 Suit, Cellumed sued BP Trust asserting a variety of legal theories related to the License Agreement; BP Trust countersued seeking the unpaid Royalty Fees, including those owed on sales of the LF Knee. BP Trust prevailed at trial and Shim and Cellumed were ordered to pay BP Trust damages for unpaid Royalty Fees owed under the License Agreement. However, by agreement of the parties, the 2013 Suit only adjudicated unpaid Royalty Fees for sales of licensed products through September of 2014.

The second lawsuit (the "2015 Suit") gave rise to this appeal. In this action, BP Trust sued Shim and Cellumed for breach of the License Agreement and unpaid Royalty Fees owed for sales occurring after September 2014, including those derived from sales of the LF Knee.

BP Trust then filed a motion for summary judgment to preclude Cellumed from re-raising three specific arguments litigated and decided in the 2013 suit. BP Trust sought to preclude Cellumed from arguing that BP Trust did not own the intellectual property associated with the products licensed pursuant to the License Agreement; that the License Agreement failed to identify the products subject to the License Agreement; and that the United States Food and Drug Administration's ban of the

3

knee device (the BP Mobile Knee) in the U.S. was a breach of the License Agreement by BP Trust. BP Trust also sought to preclude "any other argument that was raised by the Defendants in the 2013 Case and rejected by the [c]ourt or jury."

Cellumed responded and asserted, via affidavit, that Cellumed had developed a new product of its own design, the "LF Fixed Knee", had stopped selling licensed products as of September 2014, and that, therefore, Cellumed did not owe BP Trust any Royalty Fees for its product sales occurring after September 2014. Cellumed, through Shim, averred that the LF Fixed Knee was a new product developed independently by Cellumed and, as an independently developed product, it was not subject to the License Agreement. Although BP Trust's motion was directed to issue preclusion, the court's order on the motion found that Cellumed's liability for Royalty Fees in the 2015 Suit (which necessarily includes liability associated with the prosthetic knee products) was "established" (the "Collateral Estoppel Order").[2]

In addition to the Collateral Estoppel Order, liability for damages in the 2015 Suit was impacted by pervasive discovery violations by Cellumed and Shim that ultimately resulted in a severe court sanction. Finding that Cellumed's discovery violations prejudiced BP Trust as to "the central and sole remaining issue in the case, the amount of BP Trust's damages," the trial court ordered an adverse inference

---

[2] Although referred to in the record as the Collateral Estoppel Order, the order incorporated res judicata preclusion as well.

instruction at trial. The jury would be instructed that BP Trust "established its sought damages to a reasonable degree of certainty and Shim and Cellumed [would] have the burden to prove otherwise…" (the "Sanction Order").

Thus, had the 2015 Suit gone to trial, under the Collateral Estoppel Order, liability was "established" and, under the Sanction Order, Cellumed and Shim would have borne the burden of producing evidence sufficient to disprove BP Trust's claimed Royalty Fee damages arising out of the sale of products subject to the License Agreement from the period of September 2014 forward.

Armed with the Collateral Estoppel Order and the Sanction Order, BP Trust next moved for two partial summary judgments. The first sought to establish the propriety of calculating Royalty Fee damages based on a fixed percentage of Endotec's gross sales. The second sought Royalty Fee damages claimed on post-September 2014 sales of the LF Knee.

In response to both motions, Cellumed pointed to Shim's testimony in the 2013 Suit that while Cellumed was only selling the BP Mobile Knee in 2013, it then had a new knee in development. Further, Cellumed relied on Shim's August 13, 2019, and July 14, 2022, affidavits whereby Shim attested that: 1) Cellumed independently developed the LF Fixed Knee during 2013; 2) sales of the LF Fixed Knee did not start until after September 2014; and 3) Cellumed stopped selling the BP Mobile Knee/LF Knee in September 2014. Shim's later affidavit also detailed design

5

differences between the BP Mobile Knee/LF Knee and the LF Fixed Knee and the fact that the LF Fixed Knee was a new product and was not based on the BP Mobile Knee/LF Knee. In sum, Shim's affidavits introduced into the record a factual dispute as to whether the LF Fixed Knee was a new product that was not subject to the License Agreement and that was not a subject of litigation in the 2013 Suit.

Despite this evidence in the record, the trial court entered partial summary judgment for BP Trust on November 7, 2022, and found that BP Trust's Royalty Fee damages were properly calculated based on a percentage of Endotec's gross sales (the "Damage Calculation Judgment") and awarded damages to BP Trust. In doing so, the court held that the issues of liability were determined by the Collateral Estoppel Order, and that using the same damage calculation methodology used in the 2013 Suit (a fixed percentage of Endotec's sales revenue) was proper. The Damage Calculation Judgment also awarded a specific damage amount to BP Trust. The next day, the court entered another partial summary judgment for BP Trust and awarded additional Royalty Fee damages based on post September 2014 sales of the LF Knee (the "Knee Royalties Judgment"). The court again held that the issues of liability were determined by the Collateral Estoppel Order and awarded damages to BP Trust for unpaid Royalty Fees associated with prosthetic knee device sales.

Cellumed timely moved for reconsideration of the Damages Calculation Judgment and the Knee Royalties Judgment, both of which the court summarily denied. This appeal followed.

<u>Analysis</u>

Summary judgment orders are reviewed de novo. *The Fla. Bar v. Rapoport*, 845 So. 2d 874, 877 (Fla. 2003). A movant must demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510. There is no "genuine issue for trial" when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To defeat summary judgment, the non-movant must come forward and produce or identify some evidence in the record showing there is a factual dispute between the parties that is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Bensen v. Privilege Underwriters Reciprocal Exch.*, 48 Fla. L. Weekly D1085 (Fla. 6th DCA May 26, 2023), *review dismissed*, SC2023-1141, 2024 WL 370046 (Fla. Jan. 31, 2024). A factual dispute is "material" if, in accord with the substantive law, it might affect the outcome of the case. *Id.* at 248. A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. For the purposes of summary

7

judgment, where the nonmovant presents such evidence, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.

Whether collateral estoppel precludes litigation of an issue is reviewed de novo. *Criner v. State*, 138 So. 3d 557, 558 (Fla. 5th DCA 2014). Collateral estoppel will bar relitigating an issue if five elements are present:

> (1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.

*Id.* (quoting *Cook v. State,* 921 So. 2d 631, 634 (Fla. 2d DCA 2005)).

With regard to Shim's affidavit opposing BP Trust's partial summary judgment motions, "a party when met by a Motion for Summary Judgment should not be permitted by his own affidavit, or by that of another, to baldly repudiate his previous deposition so as to create a jury issue, especially when no attempt is made to excuse or explain the discrepancy." *Ellison v. Anderson*, 74 So. 2d 680, 681 (Fla. 1954). The exception is where an affiant provides a "credible explanation . . . as to the reason for the discrepancy between his earlier and later opinions." *Elison v. Goodman*, 395 So. 2d 1201, 1202 (Fla. 3d DCA 1981) (quoting *Croft v. York*, 244 So. 2d 161, 165 (Fla. 1st DCA 1971)).

8

While BP Trust asserts Shim's affidavits should be disregarded as inconsistent with his prior deposition testimony, a proper evaluation of Shim's statements reveals that there was no inconsistency. Shim testified by deposition in the 2013 Suit that Cellumed was, *at that time*, only selling the BP Mobile Knee/LF Knee. Shim's later testimony and attestation in the 2015 Suit regarding Cellumed's development and sale of the LF Fixed Knee, as well as Cellumed ceasing sales of BP Mobile Knee/LF Knee, reference the post-September 2014 period. As such, the record reveals no inconsistency. Shim's affidavits detailing the timing for the development and sales of the LF Fixed Knee also provide an explanation for the difference in his testimony concerning the periods prior to and after September 2014.

Thus, Shim's affidavits introduce a genuine issue of material fact into the record as to: 1) whether sales of the LF Fixed Knee could have been an issue litigated in the 2013 Suit; and 2) whether Cellumed sold any licensed products after September 2014 that would require payment of Royalty Fees to BP Trust. As such, the court's reliance on the Collateral Estoppel Order to support the two partial summary judgments and damage awards for the post September 2014 period was error.

Reviewing the factual record in the light most favorable to Cellumed, a genuine issue of material fact requiring resolution by a trier of fact is apparent. Both the Damage Calculation Judgment and the Knee Royalties Judgment rest upon and incorporate the factual determination that Cellumed was continuing to produce and

9

sell a knee prosthetic device after September 2014 that was subject to the License Agreement. However, Shim's sworn testimony and affidavits directly contradict that determination and introduce genuine issues of material fact. Shim avers both that no licensed products whatsoever were sold after September 2014 and that the LF Fixed Knee device sold after September 2014 was a product not subject to the License Agreement. Doubtlessly, these disputed factual issues are material to the determination of whether Cellumed breached the License Agreement in the 2015 Suit.[3]

## Conclusion

For the foregoing reasons, the November 7, 2022 and November 8, 2022 partial summary judgment orders are reversed. The case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED for further proceedings.

NARDELLA and MIZE, JJ., concur.

Diane G. DeWolf, of Akerman LLP, Tallahassee, Monica M. Kovecses, of Akerman LLP, Orlando, and Peter J. Solnick, of Solnick Law, P.A., Aventura, for Appellants.

---

[3] *See, e.g.*, *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 630 (Fla. 4th DCA 2021); *Farman v. Deutsche Bank Nat'l Tr. Co. as Tr. for Long Beach Mortg. Loan Tr. 2006-05*, 311 So. 3d 191, 195 (Fla. 2d DCA 2020) (setting forth required elements of a breach of contract claim).

Matthew B. Devisse and Edmond E. Koester, of Coleman, Yovanovich & Koester, P.A., Naples, for Appellee.

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED